In the Matter of HELENA HOLLAND, Doing Business as " HOLLAND VOCATIONAL SERVICE ", Appellant, against EDWARD W. EDWARDS et al., as Members of the State Commission Against Discrimination, Respondents.

In the Matter of STATE COMMISSION AGAINST DISCRIMINATION, Respondent, against HELENA HOLLAND, Doing Business as " HOLLAND VOCATIONAL SERVICE ", Appellant.

First Department, July 7, 1953.

*William E. Vogel* of counsel (*Burke & Burke,* attorneys), for appellant.

*Henry Spitz* of counsel (*Milton Rosenberg* with him on the brief; *Henry Spitz,* attorney), for respondent.

BERGAN, J.  The petitioner Holland operates an employment agency and by this proceeding reviews a determination by the State Commission Against Discrimination containing directives and requirements affecting petitioner's business.

By a separate proceeding in pursuance of the New York Law Against Discrimination (Executive Law, art. 15) the commission seeks an order compelling compliance with its determination. The court at Special Term has dismissed the Holland petition to annul the determination and has granted the order of compliance sought by the commission.  From these decisions embodied in one order Holland appeals.

The record made at a hearing of the charges before the commission is factually undisputed, since petitioner who had filed an answer and who was present with her attorney at the hearing on June 16, 1952, rested before any testimony was taken and left the hearing room.

Rue Kingsley was the main witness at the hearing.  She testified that on September 18, 1951, in response to a newspaper advertisement for a secretary she went to the Holland agency in New York and made application.  She has married since

that date; before her marriage her name was Rue Lehds. She testified that she was given an employment application form which she filled out. Among other things, it contained a question whether her family name or her name was " ever changed legally or otherwise."

She testified that after the form was filled out she was interviewed by Miss Holland, who said to her on looking over the application form that " one of the schools sounded like a British school." The testimony continued: " And then she proceeded to inquire about " a former employer listed on the application. " She asked if he was Jewish. I said ' yes '. And there was a further question about that. I remember answering it or rather qualifying it by saying I believed he was of German-Jewish descent ". The testimony continued that inquiry was then made as to the maiden name of that employer's wife. " She proceeded to ask me to spell it out, which I did. She then said ' What sort of name is that? ' * * * She then commented on the spelling of my name * * *. She said it was a rather odd spelling. I believe she asked if it was British. She then told me she was a Canadian."

The decision of the commission after factual findings which seem to us fully justified by the record, was that the oral and written inquiries described in the testimony " taken together, expressed a limitation, specification or discrimination as to creed and national origin, not based on a bona fide occupational qualification." It was further determined that the " form of application " itself " expresses a limitation, specification or discrimination as to creed and national origin."

The order which was entered by the commission based on its findings and decision was that the petitioner Holland " cease and desist " from certain acts while acting in the course of business as an employment agency. This order may be summarized by saying that it prohibited the making of " any inquiries " either " directly or indirectly " when interviewing applicants for employment " respecting race, creed, color or national origin "; from giving consideration to those factors in evaluating applicants; and from using in the application blanks reference to change of family name unless previously approved by the commission.

The commission's order contained certain additional requirements for affirmative action by the petitioner Holland. Among the requirements were a direction to apply the same standards

for evaluation of all applicants for employment without considering race, creed, color or national origin; a direction not to furnish prospective employers information on these subjects; not to accept orders from prospective employers containing any such limitations; and to furnish the commission with all job orders " which raise a question " whether a limitation or specification, discriminatory under the intent of the statute is intended.

The commission further directed that the petitioner furnish it for a period of a year a list of persons who apply for employment, with the results obtained; and a list of all job orders placed and the referrals thereto; and to make available to the commission books and records of the business.

The petitioner's argument here in the main part is that she made no inquiries which could be regarded as an unlawful employment practice; that the form of application blank used was not unlawful; that the commission has no jurisdiction over the petitioner; that there is, in any event, no basis for some of the affirmative directions in the commission's order.

We concern ourselves first of all with the scope of the commission's power. Its range may be seen by examining the problem with which the Legislature dealt by chapter 118 of the Laws of 1945 and the tasks which it imposed on the commission to carry out the policy of the State announced in its Law Against Discrimination.

In an express " exercise of the police power," and in fulfillment of the guaranty of the Constitution for civil rights, the Legislature found that the practice of discrimination against any of New York's inhabitants " because of race, creed, color or national origin " is both a threat to the rights of inhabitants and a menace to the democratic state. (L. 1945, ch. 118; Executive Law, § 125, now § 290).

The commission was created by that section " with power to eliminate and prevent discrimination in employment " based on considerations of race, creed, color or national origin, " either by employers, labor organizations, employment agencies or other persons ". Besides being authorized to eliminate and prevent such discrimination the commission was given an omnibus grant of power to " take other actions against discrimination " as defined in the statute and given an additional grant of " general jurisdiction and power " for the purposes described. The language originally employed has been amended somewhat in detail (L. 1952, ch. 285) but the changes certainly did not narrow the power of the commission.

It would not be easy to conceive authority more broadly stated than this was by the Legislature in its delegation to the commission, and within the area of prescribed action and in the field of discrimination as defined by the statute the jurisdiction of the commission must be taken as plenary.

The plenary powers thus granted are given plenary implementation. The commission shall " formulate policies to effectuate the purposes of this article ". (§ 294 in the current enumeration.) Upon finding after a hearing that a respondent has engaged in an unlawful employment practice within the definition of the statute, the commission shall issue an order " requiring such respondent to cease and desist " from such practice " and to take such affirmative action " as " in the judgment of the commission, will effectuate the purposes of this article, and including a requirement for report of the manner of compliance." (§ 297.)

The Supreme Court has a dual function in all this which differs somewhat in its detail from the relationship generally standing between court and administrative agency (§ 298). The scope of review seems broader than that admissible under article 78 of the Civil Practice Act on the one hand; but on the other there is a concomitant duty resting on the court to enforce the orders of the commission which are deemed by the court to be lawful.

The court at Special Term on review instituted by a party aggrieved " shall have jurisdiction of the proceeding and of the questions determined therein " and shall have power to make " an order enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the commission ". The commission is authorized by the same section to make application to the court for an order of enforcement of its determination.

Thus the court has entrusted to it a measure of judicial responsibility measured along the wide boundary of direct administrative responsibility vested in the commission to effect the legislative purpose to discourage discrimination in employment processes. On a judicial review the court must take the commission's factual findings as conclusive if they are supported by " sufficient " evidence " on the record considered as a whole ".

When the court, in turn, reaches the legal questions arising from an interpretation of the statute, its language must be construed liberally " for the accomplishment of the purposes thereof." (§ 300.) An objection shall not be considered by

the court if it was not first raised before the commission unless "excused because of extraordinary circumstances." (§ 298.)

But in reviewing the directives of the commission the court, after accepting the facts as found to the extent they rest on substantial evidence, may make any order which it deems the commission should have made. This power of review transcends our accustomed way of looking at judicial review in New York since the power of revision is not here limited to situations that would be regarded as arbitrary, capricious or illegal. It seems to have been the deliberate view of the Legislature that the large powers given to the commission should be followed by an unusual measure of judicial supervision and a shared judicial responsibility.

Since petitioner did not offer any proof at the hearing, the commission could have accepted as entirely true on the record before it the statements attributed to petitioner in the course of the application for employment made by Rue Kingsley. Accepting these statements as found by the commission we would regard as entirely warranted the finding of the commission that petitioner's inquiries constituted an unlawful employment practice.

We know, of course, that in detail some of the questions found to have been asked, considered in an insulated detachment from contextual questions, would not constitute an unlawful employment practice. The question about a change of family name, for instance, could be entirely removed from any purpose of discrimination, and in the hands of another agency or another employer, might be treated by the commission, or might be regarded by the court on review, as being quite appropriate to the employment under consideration or to the personal history or qualification of the applicant as a "bona fide occupational qualification." (§ 296, subd. 1, par. [c].) The requirement by the commission here that any further question of this sort be submitted to it for approval before use is an implicit recognition of such possibility.

All this, in the end, turns upon how facts are evaluated and how they are seen in correlation with each other. Discrimination in selection for employment based on considerations of race, creed or color is quite apt to be a matter of refined and elusive subtlety. Innocent components can add up to a sinister totality.

The inquiry concerning a previous change of name, plus inquiry concerning the nation of schooling, the religion of one's former employer and his wife, the national origin of one's name, may each be harmless under some circumstances, asked by some

questioners of some applicants, but in their aggregate they have a curiously jarring effect. They are surely quite capable, all together, of becoming the kind of practice which the Legislature defined as harmful to the welfare of the State. At least we are not required on this record to believe that the commission was unreasonable in thinking as it did about the practices complained of.

When we reach that point in our inquiry we must confirm the findings, and the conclusions of the commission based on those findings, and address ourselves then to the order here reviewed. The findings of unlawful employment practices being justified by the record, that part of the order which requires petitioner to cease and desist from the enumerated acts seems to us not only wholly justified, but to be substantially what the statute commands the petitioner not to do in any event.

She was required by this part of the order, for instance, to cease and desist from making any inquiries in interviewing applicants for employment relating to race, creed, color or national origin. She was required additionally to end the use of the question into a change of family name, which, whatever might be said of it otherwise, was as this petitioner used it, capable of being found part of a practice prohibited by the statute. It was clearly within the power of the commission to prohibit that after finding its use as part of a discriminatory practice.

The requirement that petitioner refuse to take assignments to obtain employees in which discrimination might be an element and the requirement to furnish lists of applicants, employers and referrals, all seem likewise within the powers of the commission and justified by the findings in relation to the impact of the statute on the practices of this petitioner.

Petitioner complains especially that the direction to furnish lists of applications and employers and the results of referrals exceeds the power of the commission. But after a finding that the petitioner has engaged in discriminatory employment practice, the power to require that the commission be furnished with such information seems to us placed by the statute beyond all doubt. Upon such a finding the commission's order may require the respondent " to take such affirmative action * * * as, in the judgment of the commission, will effectuate the purposes of this article, and including a requirement for report of the manner of compliance." The power to direct a report of compliance, to which this part of the order complained of is directed, not only falls within the general terms of the commission's

authority, but also within a specific detail of its grant of power.

The powers thus exercised do not transcend the statutory grant; nor are they unreasonable if one reads this record. The other questions raised on appeal are without substance.

A statute of this kind is not workable by force. It must rest for its success on the good will of the community. But its enactment represents the mature and deliberate judgment of the people of the State, and such a formal expression of such a judgment has a way of winning, in the end, a general acceptance. Experience develops the acceptance. People who may have disagreed with either its purpose or its workability in the first place, learn to live with it and take it as it is.

The legislative judgment points the way to the feasibility of greater harmony in the community than might be thought possible in the abstract, and what is more important, practical administrative means have been found to help this feasibility along.

We ought to let the statute function freely in the area of legislative delegation. We see no undue harm or undue hardship to the petitioner from these directions of the commission.

The order should be affirmed.

COHN, J. (dissenting in part). While in the main, I am in accord with the well considered opinion of my associate Mr. Justice BERGAN, I think that in one respect the commission's order is unauthorized.

Subdivision (g) of paragraph 2 of the commission's order is improper in that it requires petitioner to maintain a record of the names and addresses of all persons who apply for opportunities to work through the petitioner for a period of one year from the date of the order, together with a full statement of the action taken by petitioner in connection with such applications, including the job openings to which each applicant was referred; the result of such referral, and all job orders placed with petitioner for a period of one year from the date of the order including as to each job order the name and the address of the employer placing the job order, the job specifications and names of the job applicants referred in response to such job order and the result of such referrals. That part of the order is punitive in character and places petitioner, in effect, on probation for a period of one year. Such an order is beyond the jurisdiction of the commission, which is authorized under section 297 of the Executive Law (L. 1945, ch. 118, § 1, as amd. by L. 1952, ch. 285, § 7) only to require a respondent to cease and desist from an

unlawful employment practice and to take affirmative action, including hiring, reinstatement or upgrading of employees, including a requirement for report of the manner of compliance.

Accordingly, I vote to modify to the extent of eliminating subdivision (g) of paragraph 2 of the commission's order and in all other respects to affirm.

CALLAHAN and BREITEL, JJ., concur with BERGAN, J.; COHN, J., dissents in part in opinion, in which DORE, J. P., concurs.

Order affirmed.