Garrard JOHNSON
v.
UNITED STATES.
No. 234–59.

United States Court of Claims.
July 15, 1960.

Thomas H. King, Washington, D. C., for plaintiff. Clifford A. Sheldon, Washington, D. C., was on the brief.

John R. Franklin, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

On December 13, 1956, plaintiff, then a master sergeant in the United States Air Force, was convicted of larceny by a general court-martial. His sentence was six months at hard labor, forfeiture of $44 per month for six months, and a bad conduct discharge. On January 15, 1957, plaintiff's conviction was approved by the convening authority but the portion of the sentence providing for the bad conduct discharge was suspended. On May 8, 1957, the unexecuted portion of the sentence including the bad conduct discharge was remitted and plaintiff was retained in the United States Air Force. Plaintiff was reduced to the lowest enlisted grade as of January 16, 1957. He seeks to recover the difference between the pay and allowances of a master sergeant in the United States Air Force and the lowest enlisted grade from January 16, 1957, the date of his reduction, to the date of judgment.

Although a separate order was not used to reflect plaintiff's reduction, it was entered on plaintiff's service record. According to Air Force administrative practice, the reduction was an automatic consequence of the court-martial sentence pursuant to Manual For Courts-Martial, Para. 126(e) (1951), as amended by Executive Order No. 10652, U.S.Code Congressional and Administrative News 1956, p. 4912. This provision will be referred to hereafter as Para. 126(e). On May 10, 1957, a review board of the JAG, USAF, affirmed the action of the convening authority, and on August 21, 1957, the United States Court of Military Appeals denied the plaintiff's petition for review.

Plaintiff vigorously argues that Para. 126(e) is invalid. Plaintiff relies on United States v. Simpson, 10 U.S.C.M.A. 229 (1959), where the United States Court of Military Appeals in an opinion by a divided court declared that Para. 126 (e) authorizing automatic reduction subsequent to certain court-martial sentences was invalid. The court declared that automatic reduction in grade under such circumstances was actually an integral part of the court-martial process. The court held that the reduction in grade constituted a judicial act and therefore operated improperly to increase the sentence of the court-martial.

We are asked to hold that Para. 126(e) permits the exercise of an improper judicial function. We are requested to set the provision aside and to declare that all the action taken under it is null and void. Numerous servicemen convicted by courts-martial have been reduced in grade by force of the provision in dispute. If we adopt plaintiff's view of Para. 126(e), we will tread heavily on long established patterns of procedure within the military.

We do not agree that Para. 126(e) is invalid because it improperly authorizes the exercise of a judicial act subsequent to a court-martial. We think the provision authorizing automatic reduction in grade in these circumstances is administrative in nature and entirely valid. In

its amended form, the paragraph reads as follows:

"Unless otherwise prescribed in regulations promulgated by the Secretary of the Department concerned, in the case of an enlisted person of other than the lowest pay grade, a court-martial sentence which, as approved by the convening authority, includes: (1) dishonorable or bad conduct discharge, whether or not suspended, (2) confinement, or (3) hard labor without confinement, immediately, upon being so approved, shall reduce such enlisted person to the lowest enlisted pay grade; provided, that the rate of pay of the person so reduced shall be commensurate with his cumulative service; and provided further, that any person so reduced shall have all rights, privileges, and property affected by such reduction restored if the sentence as finally approved does not contain any of the elements listed above."

"A court-martial is authorized to sentence an enlisted man to be reduced to an inferior or intermediate grade."

The paragraph indicates a decision by the President that those who are sentenced to a dishonorable or bad conduct discharge and confinement or hard labor shall be automatically reduced to the lowest enlisted grade. It is true that in the last sentence of Para. 126(e) courts-martial are directly given the power to impose reduction in rank as a punishment. But this in no way alters the President's constitutional power to determine as a matter of military policy that noncommissioned officers convicted by courts-martial under these circumstances must lose their rank. The fact that the authority for the President's action was expressed in a provision permitting courts-martial to give reduction in rank directly as a punishment in no way diminishes the propriety of the action.

The President's power to issue the regulation in controversy rests on firm constitutional ground. The Constitution of the United States, Art. II, § 2, provides, "The President shall be Commander in Chief of the Army and Navy * * *." The Supreme Court has long held that the President has the power to issue regulations for the government of the Armed Forces. Carter v. McClaughry, 1902, 183 U.S. 365, 387, 22 S.Ct. 181, 46 L.Ed. 236; United States v. Freeman, 1844, 3 How. 556, 567, 44 U.S. 556, 567, 11 L.Ed. 724. It is difficult to conceive of matters more relevant to the salutary government of the Armed Forces than a regulation designed to promote respect for noncommissioned officers by officers and men. In the interests of morale and discipline, the President wished to prevent the less than inspiring spectacle of an Air Force sergeant doing hard labor in an Air Force stockade. As Commander in Chief of the Armed Forces, the President unquestionably has implicit power to issue regulations to maintain the morale and discipline of our men under arms. The provision under consideration here is perfectly consistent with the responsibilities of the President as Commander in Chief as set forth in the Constitution.

We think that the proper exercise of judicial restraint requires this court to decline to intervene in this matter. Certainly it was no part of the original act by which Congress created the jurisdiction of this court to make us the overseer of the military. The wise admonition of Mr. Justice Jackson in Orloff v. Willoughby, 1953, 345 U.S. 83, at page 94, 73 S.Ct. 534, at page 540, 97 L.Ed. 842, is much in point here:

"The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters."

The action taken by the President with regard to the plaintiff is an expression of a military policy that has been enforced by our Presidents for nearly half a century. In 1917, the President issued

a regulation that a noncommissioned officer who was not sentenced to reduction in rank could not be placed in confinement. Manual For Courts-Martial, § 349 (1917). Since 1928 the Manuals have provided that sentence to confinement automatically reduces a noncommissioned officer. See Manual For Courts-Martial, § 103(d) (1928); Manual For Courts-Martial, Para. 126(e) (1951), as amended by Executive Order 10652 (1956). The conclusion to be drawn from this presidential policy is that it has been the consistent policy of the United States, reenacted by successive Presidents, that no member of the Army who is subjected to confinement shall continue to hold the rank of a noncommissioned officer.

The defendant's motion for summary judgment is granted, while plaintiff's similar motion is denied. Plaintiff's petition will be dismissed.

It is so ordered.

DURFEE, LARAMORE, MADDEN and WHITAKER, Judges, concur.