In the Matter of JOSEF V. LOMBARDO et al., Respondents, *v.* BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Appellant.

First Department, May 14, 1963.

*Mathias F. Correa* of counsel (*Leo A. Larkin, Corporation Counsel*), for appellant.

*Edward D. Burns* of counsel (*Saxe, Bacon & O'Shea,* attorneys), for respondents.

*Whitman Knapp* of counsel (*Robert M. Benjamin, Frank E. Karelsen* and *Fred N. Fishman* with him on the brief), for Public Education Association, *amicus curiæ.*

BREITEL, J. The Board of Higher Education, in a proceeding brought against it under article 78 of the Civil Practice Act,

appeals, with leave, from an order directing a jury trial of issues of fact. Petitioners are associate professors in one of the city colleges who contend that they failed of appointment as full professors because of religious discrimination. They seek annulment of the actions of the college and the board in refusing them such promotion and also request further unspecified relief.

The pivotal issues are few and determinative. Resolution of these issues requires reversal of the order and dismissal of the petition.

Involved is a procedure for promotion specified in the by-laws of the board which, under the statute, has the ultimate power of appointment (Education Law, § 6202, subd. 3). Promotion in the advanced ranks of the instructional staff is determined by the exercise of administrative discretion, using faculty committees for recommendations and based upon the records and evaluation of candidates, with internal procedures for review of action on candidacies, including ultimate review by the board. Although various hearings were granted petitioners, none is mandated by law. As a consequence, the only aspect of the matter subject to judicial review is whether the action of the board was arbitrary or capricious (Civ. Prac. Act, § 1296; *Matter of Fink* v. *Cole,* 1 N Y 2d 48; *Matter of Going* v. *Kennedy,* 5 A D 2d 173, 175–176, affd. 5 N Y 2d 900; 1 N. Y. Jur., Administrative Law, § 178; Goldstein, Judicial Review of Administrative Action, 2 Syracuse L. Rev. 199, 205–207).

Petitioners' case, although extended in the record and in the briefing, is exceedingly simple in structure. Petitioners contend that their qualifications for promotion were superior to those who were actually selected, although they ultimately concede that those selected were qualified, as distinguished from the contention that their qualifications were inferior to those of petitioners. From this premise, buttressed by sporadic instances of anti-Catholic bigotry attributed to a few individuals on the college staff, and the findings of another agency (the State Commission for Human Rights, then known as the State Commission Against Discrimination) that there had been discriminatory " resistance " and " instances of discrimination " against teachers of Roman Catholic persuasion, petitioners conclude that their failure to receive promotion was caused by religious discrimination. At the same time, petitioners recognize that promotions in the advanced academic ranks are not determined solely by lapse of time and record qualifications consisting of advanced degrees and written works. They admit that the more elusive qualifications of teaching ability, administrative capacity and creative inspiration are relevant.

The board's by-laws provide the standard for promotion: "Professor Qualifications: For promotion or appointment to the rank of professor, the candidate must possess the qualifications for an associate professor, and in addition a record of exceptional intellectual, educational or artistic achievement. There shall be evidence of his continued growth." (§ 15.14.) It should be readily evident that such qualifications are not mechanically measurable nor susceptible to visual comparison with conclusive result.

Consequently, petitioners' foundation argument, without more, fails to entitle them to any relief on the existing record. Only if, in addition to the foregoing, petitioners have alleged sufficient to show unlawful discrimination of some kind, or any other kind of unlawfulness, are they entitled to relief. To establish their contention of discrimination petitioners rely on a few incidental transactions, some of many years ago, in which particular individuals on the college staff expressed bigoted attitudes from which one might infer bigoted action flowed. So long as these were peculiarly isolated and could not be attributed to persons in key positions with respect to the instant promotions, there is insufficient to sustain the burden of establishing unlawful discrimination generally or in the instant appointments.

The record is replete with evidence of consideration by the college committees and the board of all of the proper factors to be evaluated, and, consequently, it is difficult to sustain the accusation that either committees in the college or the board acted arbitrarily. Whether sporadic instances of resistance or discrimination exist, assuming this could be proven, is not relevant to the right of petitioners to relief in the very individual and personal matter of advanced academic promotion. Had there been a showing of systematic exclusion or restriction, or a generalized pattern of unlawful discrimination, or any evidence of persistent religious or other unlawful discrimination directed to petitioners, it might be another matter.* (There were some isolated incidents of discrimination described by petitioner Mullally, but they occurred years ago, and he achieved advances and promotions despite these incidents.) The situation becomes even more confusing on the board's demonstration, not disputed by petitioners, that persons of petitioners' own religious persuasion were indeed promoted, were represented on

---

* See *Matter of Castle Hill Beach Club* v. *Arbury*, 2 N Y 2d 596; *Matter of Jeanpierre* v. *Arbury*, 3 A D 2d 514, 518 *et seq.* [dis. op. by Mr. Justice FRANK], mod. 4 N Y 2d 238; *Matter of Holland* v. *Edwards*, 282 App. Div. 353, affd. 307 N. Y. 38; cf. *People* v. *Agron*, 10 N Y 2d 130, 141.

the college committees, were on the board subcommittee which investigated their charges, and, of course, were represented on the board itself. In short, there is nothing to support the bare conclusions of petitioners and, thus, they do not succeed in even raising an issue of fact requiring trial.

Moreover, in fairness to the board it should be pointed out the reports and analyses before it sustain the rejection of petitioners for promotion and the choice of the successful competitors, although, to be sure, they do not compel such rejection and choice. To top off the matter, after petitioners' complaints to it, a careful and thorough investigation was made by a representative subcommittee, including prominent members of unquestioned integrity and capacity, whose freedom from bias could not be rationally, and is not, questioned. The subcommittee rejected the charges, with qualifications that are not material.

Insofar as petitioners attempt to rely on the findings of the State Commission for Human Rights there is a compounded difficulty. In the first place, the commission findings relied on relate to matters which are not connected by petitioners with the persons who had the responsibility to pass upon petitioners' qualifications or to the instant promotion proceedings. In the second place, since these are merely the findings, if indeed they were findings in any quasi-judicial sense, of another agency, they are not binding upon the board and are hardly relevant in this judicial proceeding. They are, in short, *res inter alios acta*. All of these considerations are particularly important in institutions as large as those contained in the city university system.

The test is, of course, whether petitioners' allegations, other than bare conclusions, if proven true would make out a case. The answer is that not only do the allegations not make out a case, but if they did, then from this time few qualified candidates could be denied judicial relief upon any failure to promote. The only required showing would be that the candidate was qualified on the record and that somewhere, somehow, in the college there was evidence of sporadic individualized discrimination against other persons of the same religious persuasion or other classification.

The board also urges that this proceeding may not lie because under the provisions of article 78 (Civ. Prac. Act, § 1285, subd. 4) petitioners must have first exhausted their administrative remedies. The board points to petitioners' right to appeal to the Commissioner of Education which right they never exercised (Education Law, § 310). The Court of Appeals has

not decided in what cases one must exhaust the right to appeal to the Commissioner (*Matter of Sloat* v. *Board of Examiners,* 274 N. Y. 367, 374). For the reasons given above it is not necessary now to attempt a conclusive answer to that difficult question (but, see, *Matter of O'Connor* v. *Emerson,* 196 App. Div. 807, 810, affd. 232 N. Y. 561).

This much is clear, however, and is relevant to the contentions of the litigants. Cases involving the exhaustion of remedies in plenary actions are not necessarily relevant in an article 78 proceeding (e.g., *Namro Holding Corp.* v. *City of New York,* 17 A D 2d 431; *Cottrell* v. *Board of Educ. of City of N. Y.,* 181 Misc. 645, affd. 267 App. Div. 817, affd. 293 N. Y. 792). Nor are cases relevant which involve attack upon or construction of statutes (e.g., *Matter of Jacobson* v. *Board of Educ. of City of N. Y.,* 177 Misc. 809, 812, mod. 265 App. Div. 837, motion for leave to appeal denied 265 App. Div. 935).

The most serious confusion, shared by both sides, is to identify judicial review under article 78 or in any other judicial procedure with the review available before the Commissioner of Education, as if they might be completely alternative in scope. The Commissioner's scope of review is not limited by the tests of arbitrariness or substantial evidence, as any judicial review is. Hence, the significance of judicial suggestion of the inappropriateness or inadequacy of judicial review in some cases involving acts of administrative discretion in matters of "school policy" (e.g., *Bullock* v. *Cooley,* 225 N. Y. 566, 576, 578; *Matter of Nestler* v. *Board of Examiners,* 192 Misc. 663, 665). The pattern becomes a little clearer when it is noted that such judicial review as is permitted of the action of the Commissioner of Education is limited to arbitrariness (*Matter of Board of Educ. of City of N. Y.* v. *Allen,* 6 N Y 2d 127, 136; *Matter of Levitch* v. *Board of Educ. of City of N. Y.,* 243 N. Y. 373). In the *Allen* case, it was said (p. 136): "The term 'arbitrary', standing by itself, would be quite sufficient to make it plain that only a narrow review of the Commissioner's decisions is available in the courts." The situation, of course, is no different with respect to the judicial review of actions of school administrators or boards other than the Commissioner of Education, for in this respect the scope of judicial review would be no different than that of any other administrative action (1 N. Y. Jur., Administrative Law, § 178, *supra*).

Accordingly, the order granting a jury trial of issues of fact should be reversed, on the law, with costs to respondent-appellant, and the petition dismissed.

BOTEIN, P. J., RABIN, McNALLY and STEUER, JJ., concur.

Order entered on December 11, 1962, granting a jury trial of issues of fact, unanimously reversed, on the law, with $20 costs and disbursements to respondent-appellant, and the petition dismissed.