UNITED STATES, Appellee,

v.

**Staff Sergeant William T. LUNDY,
United States Army,
Appellant.**

ARMY 20000069.

U.S. Army Court of Criminal Appeals.

19 June 2003.

For Appellant: Captain Gregory M. Kelch, JA (argued); Colonel Adele H. Odegard, JA; Lieutenant Colonel David A. Mayfield, JA; Major Jonathan F. Potter, JA; Captain Katherine A. Lehmann, JA (on brief); Colonel Robert D. Teetsel, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Stephanie D. Sanderson, JA.

For Appellee: Captain Christopher G. Graveline, JA (argued); Colonel Steven T. Salata, JA; Lieutenant Colonel Denise R. Lind, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Virginia G. Beakes, JA, USAR; Captain Karen J. Borgerding, JA; Captain Braulio Mercader, JA (on brief); Colonel Lauren B. Leeker, JA.

Before CHAPMAN, Senior Judge, HARVEY, Senior Judge, and STOCKEL, Appellate Military Judge.

## OPINION OF THE COURT

STOCKEL, Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of forcible sodomy of a child under twelve years of age, forcible sodomy of a child under sixteen years of age, and inde-

cent acts with a child under sixteen years of age (six specifications), in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 [hereinafter UCMJ]. Further, appellant was convicted, contrary to his pleas, of attempted carnal knowledge with a child over the age of twelve years and attempted indecent acts with a child under the age of sixteen years, in violation of Article 80, UCMJ, 10 U.S.C. § 880. The military judge sentenced appellant to a dishonorable discharge, confinement for twenty-three years, and reduction to Private E1. The convening authority approved only so much of the sentence as provided for a dishonorable discharge and confinement for eighteen years. The convening authority, as required by the pretrial agreement, deferred the automatic forfeitures and adjudged reduction from the date the sentence was adjudged until action,[1] and waived automatic forfeitures for six months, after action, directing payment to appellant's spouse.

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, appellant asserts that his pleas are improvident because the convening authority failed to comply with the pretrial agreement in two material ways: (1) by failing to suspend any adjudged reduction in rank for a six-month period after action and (2) by failing to waive the automatic reduction for six months. On 12 March 2003, this court ordered the government to supplement its brief.[2] Although we agree that the conven-ing authority's failure to comply with the pretrial agreement was error, relief is not warranted in this case.

## FACTS

The convening authority approved a pretrial agreement, which provided, in part, that appellant "offer[s] to enter pleas ... provided the convening authority will ... suspend any and all adjudged and waive any and all automatic reductions and forfeitures, and pay them to [appellant's wife] to the full extent as allowed by law."[3] The military judge discussed the parties' understanding regarding the clause "to the full extent allowed by law," and determined that the convening authority was required to suspend for six months after action the adjudged and automatic reduction in rank, effective the date of the convening authority's action.[4] Although the convening authority ultimately disapproved the adjudged reduction in rank, he failed to take any action to suspend the post-action, automatic reduction in grade under the provisions of Article 58a(a), UCMJ, 10 U.S.C. § 858a(a).

## DISCUSSION

■ If there is a misunderstanding or government nonperformance of a material term of the pretrial agreement, "the remedy is either specific performance of the agreement or an opportunity for the accused to with-

---

1. Unless deferred, Articles 57(a)(1) and 58b, UCMJ, 10 U.S.C. §§ 857(a)(1) and 858b, require confined soldiers to be reduced to the adjudged grade fourteen days after the sentence is adjudged and to forfeit all pay and allowances adjudged at a general court-martial.

2. The government was ordered to provide this court with appellant's finance documents from 1 February 2000 to 1 December 2000; all documents pertaining to the transition compensation paid to appellant's wife; and the net waived amount under the waiver provisions specified in the Department of Defense Financial Management Regulation, Volume 7A, para. 480306C (July 1996) [hereinafter DoD FMR, Vol. 7A], for the period from 26 May 2000 to 25 November 2000, if the appellant had been retained in the grade of E6. On 4 April 2003, the government submitted the requested documents.

3. During oral argument, appellate defense counsel indicated this term in the pretrial agreement originated from appellant's trial defense counsel.

There was no allegation or evidence that the guilty plea was induced by government threats, misrepresentations, or false promises. When asked how trial defense counsel envisioned the implementation of this term, appellate defense counsel proffered no explanation. "[W]hen a plea bargain is discussed, and hence sentencing becomes the client's preeminent concern, it is incumbent on counsel to acquaint himself or herself with all the available alternatives and their consequences for the [accused's] liberty and rehabilitation." *Correale v. United States*, 479 F.2d 944, 949 (1st Cir.1973). This duty is also imposed upon the staff judge advocate. Failure to do so is inexcusable.

4. After imposing sentence, the military judge must address the parties' understanding of any limitations on the sentence to assure that there is a mutual agreement. *United States v. King*, 3 M.J. 458 (C.M.A.1977); *see* Rule for Courts–Martial [hereinafter R.C.M.] 910(h)(3).

draw from the plea." *United States v. Smith,* 56 M.J. 271, 273 (C.A.A.F.2002) (citing *Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)); *see United States v. Williams,* 55 M.J. 302 (C.A.A.F.2001). The government, though, may provide alternate relief if it will achieve the objective of the agreement and if appellant consents to such relief. *United States v. Perron,* 58 M.J. 78 (C.A.A.F.2003); *Smith,* 56 M.J. at 273; *United States v. Olson,* 25 M.J. 293, 298–99 (C.M.A.1987). In the present case, the convening authority agreed to but (1) did not suspend the adjudged reduction in rank [5] and (2) did not suspend the imposition of the automatic reduction in rank for six months after date of action.

### Failure to Suspend the Automatic Reduction in Rank

■ Generally we have the same powers with respect to modification of a sentence as the convening authority, but we do not have express authority to suspend a sentence or any part thereof. R.C.M. 1203(b) discussion. Our inability to suspend a sentence or any part thereof is a limitation on our authority to take such actions as a matter of sentence appropriateness. UCMJ art. 66(c); *United States v. Simmons,* 2 U.S.C.M.A. 105, 6 C.M.R. 105, 1952 WL 2285 (1952). Using our authority to review matters of law, however, we may enforce that which the convening authority was legally bound to do. *United*

*States v. Cox,* 22 U.S.C.M.A. 69, 46 C.M.R. 69, 1972 WL 14393 (1972). Under Article 71(d), UCMJ, 10 U.S.C. § 871(d), the convening authority may suspend the execution of any sentence or part thereof, except a death sentence. *See* R.C.M. 1108(b). Accordingly, we have authority to suspend a sentence or any part thereof to ensure compliance with a pretrial agreement. *Cox,* 22 U.S.C.M.A. at 72, 46 C.M.R. at 72.

■ Under Article 58a, UCMJ, a soldier will be reduced to the pay grade E1, effective on the date of the convening authority's approval of a sentence which includes: (1) a dishonorable or bad-conduct discharge; (2) confinement; or (3) hard labor without confinement, unless the Secretary of the Army otherwise prescribes by regulation.[6] A reduction in rank under this provision is administrative in nature and takes effect independently of any judicially imposed reduction in rank. *United States v. Powell,* 12 U.S.C.M.A. 288, 30 C.M.R. 288, 1961 WL 4439 (1961); R.C.M. 1003(b)(4) discussion.

■ We hold that suspension of the automatic reduction in rank is a material component of appellant's pretrial agreement. We decline, however, to order suspension of appellant's reduction for six months. Convening authorities are permitted to probationally retain enlisted members in the grade held at sentencing or any intermediate grade, but

5. The convening authority, however, disapproved appellant's adjudged reduction. This obviates the agreement to suspend any adjudged reduction.

6. Article 58a, UCMJ, was enacted to clarify the impact of decisions by the then Court of Military Appeals and the Court of Claims. *Manual for Courts–Martial, United States* (1951 ed.) [hereinafter *MCM,* 1951], para. 126e required that an enlisted member, whose approved sentence included a punitive discharge, confinement, or hard labor without confinement, be automatically reduced to the lowest enlisted pay grade. The Court of Military Appeals held that the automatic reduction provisions of *MCM,* 1951, were invalid and that, to be effective, a reduction in grade must be specifically adjudged as part of the court-martial sentence. *See United States v. Simpson,* 10 U.S.C.M.A. 299, 27 C.M.R. 303 (1959). Later in 1959, the Comptroller General issued an opinion, holding that enlisted members coming within the scope of the *Simpson* decision

could be paid only at the lowest enlisted pay grade. *Decision of the Comptroller General,* B–139988 (Comp.Gen. August 19, 1959). The Comptroller General further held that the automatic reduction provision of *MCM,* 1951, para. 126e was administrative rather than judicial in character and that members should be paid at the reduced rate pending a decision by the Court of Claims in the case of *Johnson v. United States. Id.* Subsequently, the Court of Claims dismissed Johnson's petition, holding that there was ample administrative authority for the automatic reduction provision in para. 126e. *Johnson v. United States,* 150 Ct.Cl. 747, 280 F.2d 856 (1960). Article 58a, UCMJ, was then amended to preserve the "historical procedures which, subject to the authority of the Secretary concerned to make exceptions, have required the administrative reduction of any [enlisted] member whose court-martial sentence, as approved, includes a punitive discharge, confinement, or hard labor without confinement." S.Rep. No. 86–1737, at 4 (1960), *reprinted in* 1960 U.S.C.C.A.N. 3083.

appellant's confinement and punitive discharge would also have to be suspended. *See* Army Reg. 600–8–19, Personnel General: Enlisted Promotions and Reductions, para. 7–1d (1 May 2000) [hereinafter AR 600–8–19]; DoD FMR, Vol. 7A, at ch. 48, para. 480201. Army Reg. 600–8–19, para. 7–1d provides that:

A soldier whose sentence to a punitive discharge, confinement, or hard labor without confinement is approved, may be probationally retained in the grade held at the time of sentencing or in any intermediate grade. *However, the convening authority must suspend execution of that part of the sentence extending to reduction in grade or other parts of the sentence which act[ ]* to automatically reduce a soldier in grade.[7]

(Emphasis added.) This provision requires the convening authority to suspend both the dishonorable discharge and confinement in order to suspend appellant's automatic reduction in grade.[8] It is clear from the providence inquiry, however, that the parties never contemplated suspending appellant's confinement and punitive discharge.

Next, we consider whether to order that appellant be paid $6,539.95.[9] Appellant argues that "the ability to provide [his] family E6 pay for six months after action was a 'significant concern' for [him] and played a 'large part' in his decision" to enter into the pretrial agreement. Brief on Behalf of Ap-

7. The government contends that the highlighted portion of this paragraph is a restatement of the convening authority's authority to suspend an adjudged reduction under Article 71(d), UCMJ, and applies to those cases where a reduction in rank is the only portion of the sentence that the convening authority intends to approve. We adopt the government's interpretation of this provision. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

8. Our interpretation is consistent with previous versions of AR 600–8–19. *See* AR 600–8–19, para. 6–1d (1 Nov. 1991); AR 600–200, Enlisted Personnel Management System, para. 6–3d (20 July 1984). Pursuant to Article 58a, UCMJ, the Secretary of the Army recently promulgated AR 27–10, Legal Services: Military Justice, para. 5–28e (6 Sept. 2002), which modified the application of the automatic reduction to the lowest enlisted grade. After 14 October 2002, the effective date of AR 27–10, an enlisted member is reduced to the lowest enlisted grade "only in a case in which the approved sentence includes, whether or not suspended, either—(a) A dishonorable or bad-conduct discharge, or (b) Confinement in excess of 180 days (if the sentence is awarded in days) or in excess of 6 months (if the sentence is awarded in months)." AR 27–10, para. 5–28e(2)(a)-(b). We note that convening authorities in the Air Force and Navy have received broader authority to suspend the application of automatic reductions in their respective services than in the current version of AR 27–10. *See* Air Force Instruction 51–201, Administration of Military Justice, para. 9.10 (2 Nov. 1999); Manual of the Judge Advocate General of the Navy, JAG Instruction 5800.7C § 0152 (Ch–3, 27 July 1998); *see also MCM*, 2002, app. 16, at A16–4 (containing "Forms for Actions Approving and Suspending Punishments Mentioned in Article 58a and Retaining Accused in Present or Intermediate Grade"). Army Reg. 600–8–19, para. 7–

1d appears to apply when a sentence includes hard labor without confinement. With respect to the apparent inconsistency between AR 600–8–19, para. 7–1d and AR 27–10, para. 5–28e, "[a]n administrative agency that promulgates inconsistent regulations interpreting an act of the Congress 'must supply a reasoned analysis.' " *Huntington Hosp. v. Thompson*, 319 F.3d 74, 75 (2d Cir.2003) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 57, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (other citations omitted)). The government failed to offer a reasoned analysis for the inconsistency between the two regulations. Accordingly, we recommend that The Judge Advocate General coordinate with the proponent of AR 600–8–19 to ensure consistency between these two regulations with respect to reductions under Article 58a, UCMJ.

9. The difference in pay between an E6 and an E1, for six months after action, is $7,093.70. The difference in basic allowance for quarters between an E6 and an E1, for six months after action, is $1,053.00. Accordingly, appellant would have been entitled to $8,146.70. Department of Defense Financial Management Regulation requires mandatory deductions, such as appropriate federal taxes, state taxes, and other deductions from this amount. *See* DoD FMR, Vol. 7A, at ch. 48, para. 480306C. The Defense Finance and Accounting Service provided the amounts that would have been deducted from appellant's pay and allowances to arrive at the net waived amount to be paid to appellant's wife. Defense appellate counsel provided no further argument or evidence to demonstrate that a different amount would have been deducted. Accordingly, appellant's wife would have received the net waived amount in the sum of $6,539.95 for the period from 26 May 2000 to 25 November 2000 if appellant had been retained in the grade of E6.

pellant, at 7. The intent of the pretrial agreement is unambiguous in its purpose. The terms are written to ensure that appellant's pay at the grade of E6 is provided from date of sentence to action and for six months after action [10] to support his family.

The government could have compensated appellant in the amount for which he bargained had appellant consented to such alternative relief. "[N]othing prohibits a lower court from ordering specific performance by the [g]overnment to ensure a servicemember gets that to which he or she is entitled." *United States v. Hardcastle*, 53 M.J. 299, 304 (C.A.A.F.2000) (Crawford, C.J., concurring). The Secretary of the Army "may provide for any emergency or extraordinary expense which cannot be anticipated or classified." 10 U.S.C. § 127. The Secretary may make expenditures that the Secretary determines to be proper, and the Secretary's determination of propriety is final and conclusive on the General Accounting Office. *See generally Matter of: Certification of Defense Intelligence Agency Emergency and Extraordinary Expense Vouchers*, 72 Comp. Gen. 279 (1993).

Appellant argues that compensation now is inadequate because his family had a greater financial need at the time of action than they do at present. In this case, however, we specifically find that the government's transition program more than fully compensated appellant's family for the six months following the convening authority's action, than had appellant been retained in the grade of E6. *See generally Perron*, 58 M.J. at 83. Effective 26 May 2000 (the date of the convening authority's action), appellant's wife received transitional compensation payments under 10 U.S.C. § 1059. For the six months following the convening authority's action, she received $225.00 in June 2000 and $1,325.00 per month from July 2000 through November 2000, for a total of $6,845.83. Title 10 U.S.C. § 1059(h), however, prohibits appellant's dependents from receiving transitional compensation for any period in which appellant receives pay and allowances. *See United States v. Paz–Medina*, 56 M.J. 501, 504 n. 9 (Army Ct.Crim.App.2001).[11] Because appellant's family received transitional compensation during this six-month period, appellant's family received full and timely government compensation.

Further, it is far from clear that appellant comes to this court with clean hands. There is evidence before this court demonstrating that appellant failed to provide both deferred and waived forfeitures to his family.[12] Ac-

---

**10.** As indicated previously, the military judge clarified, with the agreement of trial defense counsel and appellant, the meaning of "to the full extent allowed by law" to mean six months from the date of action.

**11.** Title 10 U.S.C. § 1059(h) provides:

In the case of transitional compensation by reason of a total forfeiture of pay and allowances pursuant to a sentence of a court-martial, payment of transitional compensation shall not be made for any period for which an order—(1) suspends, in whole or in part, that part of a sentence that includes forfeiture of the member's pay and allowance; or (2) otherwise results in a continuation, in whole or in part, of the member's pay and allowances.

Appellant argues that his wife was entitled to both transitional compensation and his forfeited pay and allowances. He further argues that 10 U.S.C. § 1059(h) is applicable only when total forfeitures are adjudged or when automatic forfeitures of all pay and allowances are imposed by Article 58, UCMJ, 10 U.S.C. § 858. We cannot envision any circumstance in which an accused would receive an approved sentence including total forfeiture of all pay and allowances without being confined. "When an accused is not serv-

ing confinement, the accused should not be deprived of more than two-thirds pay for any month as a result of one or more sentences by court-martial and other stoppages or involuntary deductions, unless requested by the accused." R.C.M. 1107(d)(2) discussion. "[I]mposition of total forfeitures upon someone who is in a duty status raises issue under the Eighth Amendment and under Article 55 of the Uniform Code—both of which prohibit 'cruel and unusual punishments.'" *United States v. Warner*, 25 M.J. 64, 66 (C.M.A.1987).

**12.** In his affidavit, appellant averred that his wife was to receive his full pay and allowances as an E6 from the date of sentence to date of action. To ensure payment of waived forfeitures to appellant's wife, the convening authority directed in his action that appellant provide waived forfeitures to his wife by allotment. During oral arguments, appellate defense counsel conceded that there was no evidence before this court demonstrating that appellant provided the deferred or waived forfeitures to his family. Appellant's Leave and Earnings Statements: Defense Finance and Accounting Services Form 702(LES) for the months of February 2000

cordingly, an alternative basis for denying specific performance of the pretrial agreement is our finding that appellant failed to comply with the pretrial agreement. "It is clear that [an appellant's] failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement." *United States v. Calabrese,* 645 F.2d 1379, 1389 (10th Cir.1981) (citing *United States v. Simmons,* 537 F.2d 1260, 1261 (4th Cir.1976)); *cf. United States v. Mezzanatto,* 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995).

Because we have determined that appellant received all to which he bargained for under his pretrial agreement (monetary support for his family), we decline to grant any relief. We have reviewed the matters personally raised by appellant under *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

### DECISION

The findings of guilty and the sentence are affirmed.

Senior Judges CHAPMAN and HARVEY concur.

---

through October 2000 inclusive were included with appellant's brief. Appellant submitted only a portion of his LES for the month of November 2000. No allotment for the support of appellant's wife is reflected on any LES. In an attempt to demonstrate his compliance with the pretrial agreement, appellant subsequently submitted a redacted copy of Standard Form 1199A, "Direct Deposit Sign–Up Form." This form was purported to be a true and accurate copy of a record maintained in appellant's local finance records, but not certified by the records custodian. Moreover, appellant avers that he sent some undisclosed amount, via check, to his wife for payment of living expenses in February 2000 and that his mother forwarded his pay from his account to his wife in March 2000. Although appellate defense counsel offered to provide documentation supporting appellant's averments that he provided his pay and allowances to his wife, appellate defense counsel failed to do so. We further note that the portion of the LES not submitted by appellant, but submitted by the government discloses that the direct deposit for the month of November 2000 was stopped so that a final accounting could be computed based upon appellant's termination of service. Appellant was provided a final accounting in December 2000. There is no evidence that this amount was provided to appellant's wife.