IN THE CASE OF


UNITED STATES, Appellee

v.

William T. LUNDY, Staff Sergeant
U.S. Army, Appellant

No. 03-0620

Crim. App. No. 20000069

United States Court of Appeals for the Armed Forces

Argued April 21, 2004

Decided June 24, 2004


     EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, BAKER, and ERDMANN, JJ., joined.
CRAWFORD, C.J., filed a separate concurring opinion.


<u>Counsel</u>

For Appellant:  Captain Robert E. Desmond (argued); Colonel
     Robert D. Teetsel, Lieutenant Colonel Mark Tellitocci, Major
     Allyson G. Lambert (on brief); Captain Gregory M. Kelch.

For Appellee:  Lieutenant Colonel Margaret B. Baines (argued);
     Colonel Lauren B. Leeker and Major Natalie A. Kolb (on
     brief).


Military Judge:  William T. Barto

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**.

United States v. Lundy, No. 03-0620/AR

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of a military judge sitting alone, appellant was convicted, pursuant to mixed pleas, of various sexual offenses against his children, including attempted carnal knowledge, attempted indecent acts, forcible sodomy (two specifications), and indecent acts (six specifications), in violation of Articles 80, 125, and 134, Uniform Code of Military Justice, [hereinafter UCMJ], 10 U.S.C. §§ 880, 925, and 934 (2000). He was sentenced to a dishonorable discharge, confinement for 23 years, and reduction to private E-1. Pursuant to a pretrial agreement, the convening authority: (1) approved that portion of the sentence that provided for a dishonorable discharge and confinement for 18 years; (2) deferred mandatory forfeitures and the adjudged reduction during the period from the date of the sentence until the date of the convening authority's action; and (3) waived mandatory forfeitures, beginning on the date of the convening authority's action, for a period of six months, with direction that the waived forfeitures be sent to the Appellant's wife. See Arts. 57, 57a, and 58b, UCMJ, 10 U.S.C. §§ 857, 857a, and 858b (2000). The Army Court of Criminal Appeals affirmed. United States v. Lundy, 58 M.J. 802 (A. Ct. Crim. App. 2003).

United States v. Lundy, No. 03-0620/AR

On Appellant's petition, we granted review of the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS, HAVING FOUND THAT THE CONVENING AUTHORITY DID NOT OR COULD NOT WAIVE FORFEITURES AT THE E-6 RATE AS PROVIDED IN THE PRETRIAL AGREEMENT, ERRED WHEN IT HELD THAT BECAUSE HIS FAMILY RECEIVED PAYMENTS UNDER THE TRANSITIONAL COMPENSATION PROGRAM, 10 U.S.C. 1059, HIS PLEAS WERE NOT IMPROVIDENT.[1]

## I. BACKGROUND

### A. FORFEITURE OF PAY AND REDUCTION IN PAY GRADE

### 1. Authorized forfeitures and reductions

As we noted in United States v. Emminizer, 56 M.J. 441, 442 (C.A.A.F. 2002), a court-martial may lead to two distinct types of forfeiture of pay and allowances: (1) an adjudged forfeiture included in the sentence imposed by a court-martial under Rule for Courts-Martial 1003(b)(2) [hereinafter R.C.M.]; and (2) mandatory forfeitures under Article 58b(a).  Mandatory forfeitures are not part of the court-martial sentence, but apply during periods of confinement or parole as a consequence of certain statutorily designated sentences, such as a sentence to confinement for more than six months.  Art. 58b(a)(1)-(2); see Emminizer, 56 M.J. at 443.

---

[1] We also specified an issue regarding the adequacy of advice provided to Appellant by counsel regarding the terms of the pretrial agreement.  United States v. Lundy, 59 M.J. 264 (C.A.A.F. 2004).  In view of our disposition of the granted issue, we need not address the specified issue.

A service member's pay and allowances also may be affected by a reduction in pay grade. There are two distinct types of reductions in pay grade applicable to enlisted personnel: (1) an adjudged reduction included in the sentence adjudged by a court-martial under R.C.M. 1003(b)(4); and (2) a mandatory reduction to pay grade E-1, the lowest enlisted pay grade, under Article 58a. Like mandatory forfeitures, a mandatory reduction is not part of the sentence. Moreover, under the following language of Article 58a, a mandatory reduction is subject to regulations promulgated by the separate departments:

> (a) Unless otherwise provided in regulations to be prescribed by the Secretary concerned, a court-martial sentence of an enlisted member in a pay grade above E-1, as approved by the convening authority, that includes --
>
> (1) a dishonorable or bad-conduct discharge;
>
> (2) confinement; or
>
> (3) hard labor without confinement;
>
> reduces that member to pay grade E-1, effective on the date of that approval.

Under Article 58a, each military department may establish a service-specific approach as to whether mandatory reduction in pay grade should be a consequence of a court-martial sentence. Appellant's military department, the Army, provides for mandatory reduction in pay grade if any of the three punishments

4

described in Article 58a(a) are included, unsuspended, in the sentence approved by the convening authority. See Dep't of the Army, Regulation (AR) 600-8-19, Personnel-General: Enlisted Promotions and Reductions, para. 7-1d (1 May 2000).

2.  Effective dates and pre-action deferral

Adjudged forfeitures, mandatory forfeitures, and adjudged reductions in pay grade take effect on the earlier of: (1) fourteen days after the date on which the sentence is adjudged, or (2) the date on which the sentence is approved by the convening authority. Arts. 57(a)(1), 58b(a)(1); see Emminizer, 56 M.J. at 443. However, the convening authority has discretion to defer the effective date for all or part of the period leading up to the convening authority's formal action on the sentence under Article 60(c), UCMJ, 10 U.S.C. § 860(c)(2000). See Arts. 57(a)(2), 58b(a)(1). Mandatory reductions in pay grade, in contrast, do not take effect until the convening authority takes this formal action on the sentence. See Art. 58a(a).

3.  Post-action suspension and waiver

When taking formal action on the sentence under Article 60(c), the convening authority may suspend any part of the sentence adjudged by the court-martial except for a sentence of death. R.C.M. 1108(b). This includes the authority to suspend adjudged forfeitures and adjudged reductions.

5

United States v. Lundy, No. 03-0620/AR

Different rules pertain to statutorily mandated forfeitures and reductions. The convening authority is not authorized to suspend the mandatory forfeitures required by Article 58b. If the accused has dependents, however, the convening authority has discretion to waive all or part of the mandatory forfeitures for a period not to exceed six months. Art. 58b(b). Any funds made available through such a waiver are paid directly to the dependents. Id.

Because mandatory reductions in pay grade are subject to service-specific regulation under Article 58a, the ability of a convening authority to suspend a mandatory reduction depends on the regulations of the service concerned. In the Army, a convening authority may suspend a mandatory reduction only if the convening authority also suspends the punishments that trigger a mandatory reduction under Article 58a. See AR 600-8-19, at para. 7-1d. For example, if the approved sentence includes confinement and a punitive discharge, a convening authority may suspend the mandatory reduction to pay grade E-1 only if the convening authority also suspends the confinement and the punitive discharge.

    B.  TRANSITIONAL COMPENSATION FOR ABUSED DEPENDENTS

Under 10 U.S.C. § 1059 (2000), the Secretary of Defense has established a program that provides financial assistance to the

6

dependents of service members who are the victims of dependent-abuse offenses, "such as sexual assault, rape, sodomy, assault, battery, murder, and manslaughter." Dep't of Defense, Instruction 1342.24 [hereinafter DoDI], Transitional Compensation for Abused Dependents (May 23, 1995). The program provides monthly payments to dependent-abuse victims and family members who meet the criteria established by the instruction. See id. at para. 6. The program applies to victims of dependent-abuse offenses committed by service members whose court-martial sentences result in punitive discharges or total forfeitures, or who are administratively separated for dependent-abuse offenses. 10 U.S.C. § 1059(b).

At the time of Appellant's court-martial conviction, payments to dependents began on the date that the convening authority approved a qualifying sentence. National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, § 535, 108 Stat. 2663, 2762 (1994). As a result of a subsequent amendment, payments to dependents now begin on the date of an adjudged sentence for a dependent-abuse offense if the sentence includes a punitive discharge or total forfeitures. National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, § 572(a), 117 Stat. 1392, 1485-86 (2003) (codified at 10 U.S.C. § 1059(e)(1)(A)(i)). If there is a pretrial agreement providing for disapproval or suspension of the punitive

7

separation or total forfeitures, however, payments begin on the date of the convening authority's action approving an unsuspended punitive discharge or total forfeitures. Id.; 10 U.S.C. § 1059(e)(1)(A)(ii). When a service member is being processed for administrative separation based upon dependent abuse, payments begin on the date that the member's commander initiates separation action. 10 U.S.C. § 1059(e)(1)(B).

The dependent is entitled to receive transitional compensation payments for a minimum of 12 months, even if the person who committed the dependent-abuse offense has been separated from the armed forces or otherwise no longer is eligible for military pay. See id. § 1059(e)(2); DoDI 1342.24, at para. 6.2.1. Payments continue past the 12-month period if the person who committed the dependent-abuse offense then still has an unserved period of obligated service, up to a maximum of 36 months, subject to various limitations and exclusions. See, e.g., 10 U.S.C. § 1059(e)(2); DoDI 1342.24, at para. 6.2.3 (cessation of payments if the pending punitive or administrative discharge is remitted, set aside, mitigated to a lesser punishment, or disapproved); 10 U.S.C. § 1059(g) (conditions under which a spouse, former spouse, or dependents forfeit the right to payments).

The payment schedule for dependent-abuse compensation under 10 U.S.C. § 1059 is not connected to the rates provided in

8

military pay tables.  Instead, payments are based on rates for dependency and indemnity compensation for veterans under 38 U.S.C. §§ 1311 and 1313.  See 10 U.S.C. § 1059(f).  Payments under § 1059(f) are not made from military pay accounts, but instead are paid from operations and maintenance funds.  See DoDI 1342.24, at para. 6.5.

If a dependent's eligibility for payments under 10 U.S.C. § 1059 is based solely upon a court-martial sentence to total forfeiture of pay and allowances, the dependent may not receive payments under § 1059 during any period in which the service member's right to pay and allowances has been restored, in whole or in part, as a result of a suspension of the forfeitures or other applicable law.  See 10 U.S.C. § 1059(h).  If, however, the dependent's eligibility under § 1059 is based upon a punitive discharge or administrative separation, payments begin and continue as discussed above, even if the service member is eligible for military pay and allowances.  See 10 U.S.C. § 1059(e); Memorandum from the Office of General Counsel, Dep't of Defense, to the Director of Compensation, Dep't of Defense, Transitional Compensation and Suspension/Waiver of Forfeitures, at 4 (July 2, 2001) [hereinafter "DoD/OGC Memorandum"].

A spouse may not receive benefits under both § 1059 and 10 U.S.C. § 1408(h)(1) (payments to a dependent when a service member loses eligibility for retired pay because of dependent

9

abuse).  If the spouse is otherwise eligible for benefits under both provisions, the spouse must elect which to receive.  See 10 U.S.C. § 1059(i); DoDI 1342.24, at para. 6.4.

Section 1059(i) ("Coordination of benefits") applies only to preclude concurrent payments under §§ 1059 and 1408(h)(1).  Section 1059(i) does not apply to waived forfeitures payable to a dependent under Article 58b.  A convening authority, however, may take into account the availability of transitional compensation under § 1059 when deciding whether to exercise the discretionary authority to waive mandatory forfeitures and direct payment to a dependent under Article 58b.  See R.C.M. 1101(d)(2).  When a convening authority exercises discretion to direct payment of waived forfeitures to a dependent, the convening authority's action does not affect the dependent's entitlement to benefits under § 1059 and DoDI 1342.24.  See DoD/OGC Memorandum, at 4.

C. IMPLEMENTATION OF THE PLEA AGREEMENT BETWEEN APPELLANT AND THE CONVENING AUTHORITY

Prior to trial, Appellant and the convening authority entered into a pretrial agreement.  Appellant agreed to plead guilty to multiple specifications of sodomy by force with a child and indecent acts with a child.  The convening authority agreed to "defer any and all reductions and forfeitures until sentence is approved, suspend any and all adjudged and waive any

and all automatic reductions and forfeitures, and pay them to [Appellant's] wife to the full extent as allowed by law[.]"  The military judge determined that Appellant's pleas were provident and trial proceeded on the merits of two contested charges. Ultimately, the military judge found Appellant guilty of all charges to which he had pleaded guilty.  As to the contested charges, the military judge found Appellant not guilty of the two specifications of attempted sodomy of a child; guilty, with exceptions and substitutions, of attempted carnal knowledge of a child; and guilty, with exceptions and substitutions, of attempted indecent acts.  After conducting a sentencing proceeding, the military judge sentenced Appellant to confinement for 23 years, a dishonorable discharge, and reduction to the lowest enlisted grade.

Following announcement of the sentence, the military judge conducted the required inquiry into sentence-limitation portions of the plea agreement.  See R.C.M. 910(f).  The military judge asked the parties about the provision in the agreement that payments would be made to Appellant's wife to "the full extent as allowed by law."  The parties agreed that the phrase was used to incorporate the statutory six-month maximum period for waived forfeitures under Article 58b or a longer period in the event of a change in the statute.  Counsel for both parties, and Appellant, then agreed with the military judge that

11

> the effect of the pretrial agreement on the
> sentence is that the convening authority may
> approve only so much confinement as extends
> to 18 years, but may approve the
> dishonorable discharge, but will defer the
> reduction until sentence is approved, and
> will suspend the automatic reduction and
> forfeitures and pay them to the spouse of
> the accused for a period of six months
> following approval.

Immediately following the court-martial, Appellant began to serve the adjudged period of confinement. See Art. 57(b). Per the pretrial agreement, the convening authority deferred the adjudged pay-grade reduction and the Article 58b mandatory forfeitures during the period between the court-martial and the convening authority's formal action on the sentence. See Arts. 57a and 58b(a)(1).

On the day after the sentence was adjudged, Appellant's wife, in a parallel development, filed an application for transitional compensation as an abused spouse under 10 U.S.C. § 1059. The application was approved, and under then-existing law, payments under § 1059 began when the convening authority took formal action on the sentence. See National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, § 535, 108 Stat. 2663, 2762 (1994) (amending 10 U.S.C. § 1059(e)).

Before the convening authority acted on the sentence under Article 60(c), the staff judge advocate (SJA) prepared a formal recommendation. See Art. 60(d); R.C.M. 1106. The

recommendation provided the following summary of the pretrial agreement:

> In exchange for the accused's pleas of guilty, the convening authority will defer any and all reductions and forfeitures until sentence is approved, suspend any and all adjudged and waive any and all automatic reductions and forfeitures; and pay them to Mrs. Lundy, the accused's wife, to the full extent as allowed by law; and disapprove all confinement in excess of eighteen (18) years.

The SJA forwarded this recommendation to the convening authority, along with a proposed action. The action, which was signed by the convening authority, reduced the adjudged period of confinement from 23 to 18 years, per the pretrial agreement. As further required by the pretrial agreement, the action did not approve the adjudged reduction in rank. In addition, the action implemented the pretrial agreement's requirement for waiver of mandatory forfeitures for a period of six months, specifically directing that "forfeitures be sent to the accused's wife."

The Government implemented the waiver of mandatory forfeitures, although the funds were transmitted to Appellant, contrary to Article 58b, rather than to his wife. During the six-month period following the convening authority's action in which the mandatory forfeitures were waived, Appellant discovered that the payments were at the rate for pay grade E-1,

rather than at the rate for pay grade E-6.  His pay grade had been reduced to the lowest enlisted grade, E-1, notwithstanding the fact that the plea agreement required suspension of any mandatory reduction.  Although he sought corrective action through administrative channels, he was unsuccessful.  As a result, Appellant's wife did not receive waived forfeitures at the E-6 rate as provided in the pretrial agreement.

## II. DISCUSSION

### A.   IMPLEMENTATION OF PRETRIAL AGREEMENTS

In United States v. Perron, 58 M.J. 78 (C.A.A.F. 2003), we observed that --

> where an accused pleads guilty in reliance on promises made by the Government in a pretrial agreement, the voluntariness of that plea depends on the fulfillment of those promises by the Government. . . .
>
> . . . .
>
> [W]here there is a mutual misunderstanding regarding a material term of a pretrial agreement, resulting in an accused not receiving the benefit of his bargain, the accused's pleas are improvident.  In such instances, . . . remedial action in the form of specific performance, withdrawal of the plea, or alternative relief, is required.

Id. at 82 (citations omitted).

In the present case, Appellant pleaded guilty in reliance on a promise by the Government that his confinement would not

exceed 18 years, that reductions and forfeitures would be deferred, and that for a six-month period following the convening authority's action, any mandatory reduction in pay grade would be suspended so that his wife would receive waived forfeitures at the E-6 rate. The parties to the agreement, counsel at trial, and the military judge all appear to have overlooked the Army regulation that precludes a convening authority from suspending a mandatory reduction in pay grade unless the convening authority also suspends any related confinement or punitive discharge. See part I.A.1., supra.

Because this regulatory impediment resulted from a departmental action rather than a statutory mandate, see Article 58a, the Army was free to modify the regulation, create an exception, or grant a waiver. Had the parties taken the impediment into account during negotiation of the pretrial agreement, the convening authority could have sought a waiver or exception at the departmental level or an alternative agreement could have been proposed. Based on the misunderstanding, however, Appellant pleaded guilty based upon the representations of counsel and the assurances of the military judge that the Government would fulfill its part of the agreement.

During the sixth-month period in which Appellant's wife received the waived forfeitures at the E-1 rate, it was still possible to fulfill the agreement. When Appellant brought the

15

discrepancy to the attention of military officials, the Government could have fulfilled the agreement by granting an exception or waiver to suspend the reduction and provide the waived forfeiture at the E-6 rate.  Corrective action, however, was not taken.

B. THE RELATIONSHIP BETWEEN ARTICLE 58b WAIVED FORFEITURES
AND TRANSITIONAL COMPENSATION UNDER 10 U.S.C. § 1059
IN DEPENDENT-ABUSE CASES

On appellate review, the Court of Criminal Appeals concluded that payment of waived forfeitures to Appellant's wife at the E-6 level through suspension of the mandatory reduction was a material part of the agreement between Appellant and the convening authority.  Lundy, 58 M.J. at 804.  The court stated, however, that remedial action was not necessary because Appellant's family had been adequately compensated during the six-month period from other funds, employing a three-step rationale.  First, the court noted that dependent-abuse payments had been made to Appellant's wife under 10 U.S.C. § 1059 during the six-month period.  Id. at 806.  Second, the court interpreted the law as precluding dependent-abuse compensation payments under § 1059 to a person receiving waived forfeitures under Article 58b.  Id.  Third, the court held that the erroneous payments under § 1059 adequately compensated

16

Appellant's family for the Army's erroneous failure to comply with the pretrial agreement. Id.

The interpretation of applicable law by the court below is inconsistent with the position taken by the Department of Defense in the administration of the compensation program established under 10 U.S.C. § 1059. See Part I.B., supra, and the DoD/OGC Memorandum noted therein. The Department of Defense's administration of the statute, which permits concurrent receipt of dependent-abuse payments and waived forfeitures, is consistent with the text and legislative history of § 1059 and Article 58b.

As originally enacted, subsection (e) precluded payment of dependent-abuse benefits in any case until the service member's pay and allowances were discontinued. National Defense Authorization Act for Fiscal Year 1994, Pub. L. No. 103-160, § 554, 107 Stat. 1547, 1664-65 (1993) (subsection (e)). Within a year, Congress amended subsection (e) to provide for commencement of payments in circumstances involving concurrent payment of dependent-abuse payments under § 1059 and military pay and allowances. National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, § 535, 108 Stat. 2663, 2762 (1994) (commencement of § 1059 payments on the date of the convening authority's action under Article 60(c) or, in the case of a proposed administrative separation, the date on which a

commander initiated separation action); see DoD/OGC Memorandum at 3. Congress subsequently amended subsection (e) to provide an even earlier opportunity for concurrent receipt of benefits and military pay and allowances. National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, § 572(a), 117 Stat. 1392, 1485-86 (2003) (commencement of § 1059 payment in certain circumstances on the date of sentence adjudication).

The subsequent development of the waived forfeitures provision in Article 58b reflects a similar trend. Article 58b was enacted in 1995 to limit the circumstances in which service members serving a sentence to confinement by court-martial could receive military pay and allowances. See H.R. Conf. Rep. No. 104-450, at 853 (1996). The original version of the legislation did not authorize alternative benefits for dependents of service members whose pay and allowances were subject to mandatory forfeiture while in confinement. S. 205, 104th Cong. (1995). The legislative proposal subsequently was revised to include a new section of title 10, United States Code, § 1059a, entitled "Transitional Compensation for Spouses, Dependent Children, and Former Spouses of Members Sentenced to Confinement and Punitive Discharge or Dismissal." S. 571, 104th Cong., § 2 (1995). Under the proposal, if a service member's entitlement to pay and allowances was forfeited under Article 58b, as proposed, the member's dependents could receive transitional compensation

under the new § 1059a for up to one year.  Id.  The proposed
legislation contained a "Coordination of Benefits" section which
expressly precluded transitional benefits under § 1059a for any
dependent entitled to dependent-abuse payments under §§ 1059 or
1408(h).

The legislation as enacted, however, did not retain the
proposed § 1059a, nor did it retain the prohibition against
concurrent payment of waived forfeitures under Article 58b and
dependent-abuse compensation under § 1059.  Instead, the new
legislation simply enabled convening authorities to waive
forfeited pay and allowances, in whole or in part, for a period
of up to six months, subject to a requirement that any waived
forfeitures must be paid to the dependents of the accused.  S.
1026, § 526 (1995); 141 Cong. Rec. 22153 (1995) (Amendment No.
2117); National Defense Authorization Act for Fiscal Year 1996,
Pub. L. No. 104-106, § 1122, 110 Stat. 186, 463 (1996) (enacting
Article 58b(b), UCMJ, 10 U.S.C. § 858b(b)).

The DoD/OGC Memorandum specifically considered whether
concurrent receipt of waived forfeitures and dependent-abuse
compensation under § 1059 was precluded by § 1059(h), which
states:

> In the case of payment of transitional
> compensation by reason of a total forfeiture
> of pay and allowances pursuant to a sentence
> of a court-martial, payment of transitional

19

> compensation shall not be made for any
> period for which an order --
>
> > (1) suspends, in whole or in part, that
> > part of a sentence that includes forfeiture
> > of the member's pay and allowance; or
>
> > (2) otherwise results in continuation,
> > in whole or in part, of the member's pay and
> > allowances.

Citing the development over time of specific provisions allowing concurrent payment, the Memorandum concluded that subsection (h) "should be limited to cases where a court-martial sentence does not include a punitive separation but results in total forfeitures, whether by explicit provision of the sentence or by automatic total forfeiture as a result of a sentence to confinement." DoD/OGC Memorandum, at 4. The opinion of the court below, by contrast, did not address the development of the legislation and related considerations raised in the DoD/OGC Memorandum, including the role of subsection (h) in non-discharge cases where mandatory forfeitures are triggered by a sentence to confinement. Compare Lundy, 58 M.J. at 806, with DoD/OGC Memorandum, at 3-4. Nor did the opinion of the lower court address the legislative development of Article 58b, which reflects congressional awareness of § 1059 dependent-abuse compensation during development of the waived forfeiture provisions of Article 58b(b).

In addition, R.C.M. 1101(d), which addresses the convening authority's discretionary power to waive forfeitures, is instructive. Subsection (d)(2) lists a wide variety of factors involving financial and other circumstances "that may be considered by the convening authority in determining the amount of forfeitures, if any, to be waived includ[ing] . . . the availability of transitional compensation for abused dependents permitted under 10 U.S.C. [§] 1059." This provision underscores the fact that, in deciding whether to waive forfeitures in whole or in part on behalf of a dependent, the convening authority may take into account the availability of dependent-abuse compensation under § 1059. As such, the convening authority has discretion to decide, under the circumstances of each particular case, that waived forfeitures are unnecessary in light of payments under § 1059, or that waived forfeitures are required because § 1059 payments are insufficient to meet the needs of the dependents in that case.

In view of the statutory provisions, the pertinent legislative history, and administrative implementation, we decline to conclude that Congress intended to preclude dependent-abuse victims from receiving transitional compensation under § 1059 when a convening authority has determined, as a matter of discretion, that the dependents should receive waived forfeitures under Article 58b.

C. RESPONSIBILITY FOR IMPLEMENTATION OF THE PRETRIAL AGREEMENT

In the present case, the convening authority had discretion to decide whether forfeitures should be waived in whole or in part. The convening authority exercised his discretion to provide waived forfeitures to Appellant's wife, and entered into a pretrial agreement to provide her with waived forfeitures at the E-6 rate. Once Appellant fulfilled his responsibilities under the agreement by providently pleading guilty, Appellant's wife was entitled to receive waived forfeitures at the E-6 rate. Waived forfeitures were paid, but only at the E-1 rate, contrary to the agreement.

The court below suggested that even if Appellant's wife was entitled to receive both waived forfeitures and dependent-abuse compensation, Appellant cannot complain about implementation of the agreement because, in the court's view, Appellant was obligated to prove that he had provided waived forfeitures at the E-1 rate to his wife. Lundy, 58 M.J. at 806. Under Article 58b(b), however, the responsibility for directing payments of waived forfeitures to the dependent rests with the Government, not with Appellant. To the extent that payment of waived forfeitures was made to Appellant rather than his wife, the error rested with the Army. Such evidence as exists in the record indicates that Appellant took steps to ensure that

22

payments went to his wife's bank account. The Government, on appeal, has proceeded on the basis that Appellant's family received waived forfeitures at the E-1 rate. Under these circumstances, we conclude that the record does not establish that Appellant has acted in a manner so inconsistent with the pretrial agreement that the Government would be relieved of its responsibilities under the agreement.

## D. REMEDIAL ACTION

As discussed in Section II.A., supra, when the Government does not fulfill a material provision in a pretrial agreement, remedial action is required in the form of specific performance, withdrawal of the plea, or alternative relief. In Perron, we held that an appellate court cannot impose alternative relief on an unwilling appellant. 58 M.J. at 78.

The present case is in a different procedural posture than Perron, where the Court of Criminal Appeals determined that remedial action was necessary and sought to impose it on an unwilling Appellant. Because the lower court in the present case determined that no relief was warranted, the case did not proceed to a point where the court had to reach a definitive conclusion as to: (a) whether specific performance was possible; and (b) whether there were viable options for alternative relief under Perron. Under these circumstances, a remand to the court

below is appropriate.  See, e.g., United States v. Smith, 56

M.J. 271 (C.A.A.F. 2002); United States v. Mitchell, 50 M.J. 79

(C.A.A.F. 1999).

The court below should consider whether it has authority to

suspend a reduction in pay grade for six months, or whether the

Government is otherwise willing to do so through a departmental

waiver.  If a suspension is considered, the court will have to

determine whether implementation of a suspension at this point

in time would still constitute specific performance, which would

be binding on Appellant, or whether a suspension should be

considered as a form of alternative relief, which would require

Appellant's consent under Perron.  The court is not limited to

consideration of specific performance, and may consider options

for alternative performance, subject to Perron.  See, e.g., 10

U.S.C. § 127 (2000) (Emergency and extraordinary expenses).


III.  DECISION

The decision of the United States Army Court of Criminal

Appeals is reversed.  The case is returned to the Judge Advocate

General for remand to the Court of Criminal Appeals for further

consideration in light of this opinion.

United States v. Lundy, No. 03-0620/AR

CRAWFORD, Chief Judge (concurring):

The Court of Criminal Appeals should determine if this case is distinguishable from United States v. Perron[1] because that record established that the timing of the payment was important. On January 15, 1999, Perron entered into a pretrial agreement that required the convening authority to waive all automatic forfeitures and pay those to Perron's family. On March 8, 1999, shortly after the convening authority's action, the defense counsel sent a clemency request to the convening authority noting that his family had not been paid the forfeitures and that his "family cannot survive financially without the aid."[2] He asked for relief in the form of the payment of forfeitures to his family or immediate release from jail. On March 11, 1999, the convening authority responded that he had sent a letter to the Defense Finance and Accounting Service (DFAS) requesting a waiver of all forfeitures and payment to his dependents. DFAS responded that that was not possible because he had entered a no-pay status when sentencing occurred and he was confined. Thus, because there were no forfeitures available, none could be paid to his family.

---

[1] 58 M.J. 78 (C.A.A.F. 2003).
[2] Id. at 79.

After the convening authority's action and the response from DFAS, Perron again sought relief from the Coast Guard Court of Criminal Appeals.

Perron clearly noted on the record his unwillingness to receive late payment.  However, where timing is not critical to specific performance, that is, payment plus interest satisfies the agreement, there is no reason to permit withdrawal of the plea.  The court below should determine the materiality of the timing and whether this case is different from Perron.  A payment at this time may constitute specific performance.

While it is important for the Court to note its interpretation of 10 U.S.C. § 1059 (2000), in the future, the Courts of Criminal Appeals must examine their opinions in light of Clinton v. Goldsmith.[3]

---

[3] 526 U.S. 529 (1999).