# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB, ALDYKIEWICZ, and KRAUSS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Lieutenant Colonel DENNIS E. DOCKERY**
**United States Army, Appellant**

ARMY 20110796

Headquarters, U.S. Army Support Activity and Joint Base McGuire-Dix-Lakehurst
Andrew Glass, Military Judge (arraignment)
Denise Lind, Military Judge (trial)
Lieutenant Colonel Mark A. Nozaki, Staff Judge Advocate

For Appellant: Captain John Schriver, JA; Frank J. Spinner, Esquire (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Catherine L. Brantley, JA; Captain Rachael T. Brant, JA (on brief).

22 November 2013

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

YOB, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of violating a general regulation by engaging in a prohibited relationship, one specification of assault consummated by a battery, and two specifications of adultery in violation of Articles 92, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 928, 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a dismissal and to confinement for seventeen months. The convening authority deferred appellant's automatic forfeitures from 27 September 2011 until taking action on 25 April 2012. At action, the convening authority approved the sentence as adjudged, but waived the automatic forfeitures for a period of six months for the benefit of appellant's wife.

The case is before this court for review under Article 66, UCMJ. Appellant raises one assignment of error alleging that his sentence was inappropriately severe. He argues a dismissal was too great a punishment considering that he was retirement eligible at the time of his conviction and sentence. Appellant notes that his innocent wife and other family members will suffer from the loss of these benefits. Appellant argues, "It is unfortunate that the loss of retirement benefits for family members are tied by law to the execution of a punitive discharge," and suggests, "[I]f Congress will not ameliorate the deleterious impact of this connection, then it is appropriate for the Courts of Criminal Appeals to recognize and balance the harsh effects of the law . . . ."

We have considered the record of trial and written briefs of the parties and find this assignment of error to be without merit for the reasons set forth below.

## BACKGROUND

Appellant, a married man since 1998, was a Lieutenant Colonel in the Army Reserve where he served as the Commander of the 395th Combat Sustainment Support Battalion. During periods of active duty in November-December 2008, April-May 2009, and June-October 2009, appellant engaged in sexual relations with a specialist (later promoted to sergeant) who was a member of his command. Appellant admitted he gave the specialist/sergeant preferential treatment within his command during the course of their affair due to their close personal and sexual relationship.

From June 2009 to April 2010, appellant engaged in an inappropriate relationship with another subordinate specialist in his command. Among other actions, appellant told her that his instant messenger screen name was a reference to the size of his penis; that she had other options beside her boyfriend; and that he could be her boyfriend. Appellant traded numerous sexually suggestive and intimate electronic messages with this specialist throughout his deployment in Iraq.

Appellant also developed an on-line relationship with an unmarried civilian woman named GF that continued from 2004 to 2009. In February 2010, appellant returned to the United States on mid-tour leave from Iraq. During this time he met with GF and they engaged in consensual sexual intercourse.

In April 2010, appellant returned from his deployment to Fort Dix, New Jersey, and traveled to GF's residence in Connecticut. During his visit, appellant assaulted GF by repeatedly slapping her in the face, choking her with his hands, and pulling her head back by her hair. Appellant followed the assault by engaging in rough sexual intercourse with GF during which he used degrading language towards

her. Immediately after appellant left her residence, GF called a friend in an emotionally disturbed state and described the assault. She then called the police and was taken to a hospital by ambulance. As a result of the assault, GF suffered from bruising on her face and marks on her neck that took several weeks to heal. GF testified that she suffered lasting physical and emotional issues following the assault.

**DISCUSSION**

We review sentence appropriateness de novo. *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim. App. 2001). Pursuant to our discretionary authority to review sentence appropriateness under Article 66(c), UCMJ, we make our determination by granting each appellant "individualized consideration" in light of "the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 106–07, 27 C.M.R. 176, 180–81 (1959)). Determining sentence appropriateness must be distinguished from clemency, which we have no authority to grant. *United States v. Nerad*, 69 M.J. 138, 144–46 (C.A.A.F. 2010); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). While the power to review a case for sentence appropriateness is "highly discretionary," *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999), it is intended to assure "that justice is done and that the accused gets the punishment he deserves." *Healy*, 26 M.J. at 395. Clemency, on the other hand, is a function of "bestowing mercy" and "treating the accused with less rigor than he deserves." *Healy*, 26 M.J. at 395.

When an accused is retirement eligible and faces a punitive discharge, the sentencing authority may consider evidence of estimated lost retirement pay as a matter in mitigation to lessen the punishment. *United States v. Luster*, 55 M.J. 67, 70–71 (C.A.A.F. 2001). *See also United States v. Boyd,* 55 M.J. 217, 221 (C.A.A.F. 2001). Matters in mitigation are introduced "to lessen the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of clemency." Rule for Courts-Martial [hereinafter R.C.M.] 1001(c)(1)(B). An accused has a broad right to present mitigation evidence to a court-martial on sentencing. *United States v. Becker*, 46 M.J. 141, 143 (C.A.A.F. 1997). So long as the evidence in mitigation is relevant to lessening a pending punishment or to furnish grounds for a recommendation of clemency, that evidence may be introduced by the accused and weighed by the sentencing authority. *Id.* (citing R.C.M. 1001(c)(1)(B)).

Our superior court has recognized that the repercussions from a sentence that affects retirement eligibility are valid considerations during sentencing. *See Boyd*,

3

55 M.J. at 221; *United States v. Sumrall*, 45 M.J. 207, 209 (C.A.A.F. 1996); *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988). *Cf. United States v. Jeffery*, 48 M.J. 229, 231 (C.A.A.F. 1998). "[I]n reality, the impact of an adjudged punishment on the benefits due an accused who is eligible to retire is often the single most important sentencing matter to that accused and the sentencing authority." *Griffin*, 25 M.J. at 424. Similarly, in the context of forfeitures, military judges have long instructed panel members to specifically "consider the implications to the accused (and (his) (her) family) of such a loss of income." Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 2-5-22 (1 Jan. 2010). As this court previously held in *United States v. Pemberton*:

> Given the broad latitude that an accused has to present matters in extenuation and mitigation, we conclude that the effect a sentence has on an accused's retirement benefits, and the impact of the loss of those benefits on innocent family members, constitutes a relevant factor in our determination of sentence appropriateness under Article 66, UCMJ.

Army 20110127 (Army Ct. Crim. App. 17 May 2013) (mem. op.).[*]

There is no doubt that military dependents make great sacrifices on behalf of soldiers. These dependents are recognized as "a critical source of support to service members and the military," impacting both retention and readiness. Sondra Albano, *Military Recognition of Family Concerns: Revolutionary War to 1993*, 20 Armed Forces & Soc'y, no. 2, 1994 at 283. By regulation, the U.S. Army imposes an official obligation on service members to financially support their dependent family members. Army Reg. 608-99, Family Support, Child Custody, and Paternity, para. 2-1 (29 Oct. 2003). At times, federal law authorizes direct payments of retirement benefits to certain dependents under a theory that these dependents have directly earned the right to these benefits. *See, e.g.*, Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2006). Evidence in this case described how appellant's wife endured hardships during appellant's four separate deployments, leaving her alone at those times not only to manage all the family affairs but also continue her own career.

---

[*] These matters may be considered in another context as well, as our superior court has held that the "personal financial burdens confronting the accused or his family" is a matter relevant to clemency for the convening authority to decide. *Healy*, 26 M.J. at 396. The fact that they may be considered in the context of clemency does not preclude their consideration by the sentencing authority or this court in a determination of sentence appropriateness.

We are mindful of the financial impact a court-martial sentence may have on innocent family members. Currently, Congress has authorized the Secretary of Defense to establish a program to pay monthly transitional compensation to dependents or former dependents of service members who have been convicted of a dependent-abuse offense, such as sexual assault, battery, murder, and manslaughter. 10 U.S.C. § 1059 (2006); Dep't of Def. Instr. 1342.24, Transitional Compensation for Abused Dependents (23 May 1995). *See generally United States v. Lundy*, 60 M.J. 52, 55–56 (C.A.A.F. 2004). Family member victims of dependent-abuse offenses are eligible for transitional compensation when the servicemember's court-martial sentence includes a punitive discharge or total forfeitures, or the service member is administratively separated. 10 U.S.C. § 1059(b). However, Congress has not enacted similar legislation to address the situation where an innocent family member is not the victim of a crime, but nonetheless suffers the collateral consequences of a sentence imposed as punishment. Contrary to appellant's argument, it is not incumbent on this court to substitute judicial action for legislative action where Congress has remained silent. Our role is to weigh the impact on family members along with all other matters within the entire record relevant to an appropriate sentence, and affirm only that sentence, or portion thereof, determined to be appropriate in law and fact. UCMJ art. 66(c).

We have given individualized consideration to the appropriateness of appellant's sentence in light of the nature of the offenses, appellant's service record, his evidence in extenuation and mitigation, including the impact on appellant and his family members from his confinement and the loss of his retirement income, as well as the entire record of trial. Of note, appellant fails to provide any evidence at trial or on appeal quantifying the specific loss of retirement income he would have expected to collect, but for the dismissal. For reserve component service members, retirement income can vary depending on the amount of active duty service they have completed. In addition, appellant's sentencing argument at trial and clemency submission to the convening authority made pursuant to R.C.M. 1105, focused on his desire to reduce his period of confinement, as opposed to arguing against a dismissal or requesting the Convening Authority set aside his dismissal.

Notwithstanding the obvious, albeit unquantified, effect of the dismissal and loss of retirement benefits on appellant and his family members, this must be considered in conjunction with the offenses that reflect appellant's repeated and substantial abuse of the command authority to which he was entrusted. Significantly, appellant committed some of these offenses while deployed to a combat environment, a place where the requirement for unit cohesion and readiness is of great importance. Appellant further admitted to engaging in an adulterous relationship on more than one occasion under circumstances where this conduct was prejudicial to good order and discipline in the armed forces and service discrediting.

DOCKERY — ARMY 20110796

Appellant violently abused his paramour during an adulterous sexual encounter in a manner that caused her to suffer lasting physical and emotional trauma. Thus, in consideration of all of the aforementioned factors and the entire record, we find appellant's sentence as adjudged and approved by the convening authority to be appropriate.

## CONCLUSION

We hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Judge ALDYKIEWICZ and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

6