# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32668

————————————

### UNITED STATES
*Appellee*

v.

### Johnathan M. FUMEGA
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 March 2022

————————————

*Military Judge:* Bryon T. Gleisner.

*Sentence:* Sentence adjudged on 26 August 2020 by SpCM convened at Shaw Air Force Base, South Carolina. Sentence entered by military judge on 11 September 2020: Bad-conduct discharge, confinement for 125 days, and reduction to E-1.

*For Appellant:* Major Sara J. Hickmon, USAF.

*For Appellee:* Captain Cortland T. Bobczynski, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RAMÍREZ, and CADOTTE, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RAMÍREZ, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification each of wrongful use of heroin and fentanyl on divers occasions, and one specification of wrongful possession of methadone, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 912a.[1]

The plea agreement provided for a sentencing range of between 90 and 150 days of confinement. The plea agreement also provided that periods of confinement were to be served concurrently. There were no other limitations on the sentence that could be imposed. After accepting Appellant's pleas of guilty, the military judge sentenced Appellant to a bad-conduct discharge, confinement for 125 days,[2] and reduction to the grade of E-1. The convening authority took no action on the sentence.

Appellant raises one issue on appeal: whether Appellant received ineffective assistance of counsel.[3] We find no material prejudice to a substantial right of Appellant and affirm the findings and sentence.

## I. BACKGROUND

Appellant began his service to the Air Force on 2 January 2019. While at Shaw Air Force Base (AFB), his first duty station, and before he received his first enlisted performance report, he was already using heroin, fentanyl, and methadone.[4]

The criminal investigation in this case began when Appellant requested repairs to his dorm room. While the maintenance technician was working in Appellant's room, he saw, in plain sight, approximately five syringe needles and a spoon with a piece of light brown cotton sitting in the center of an open drawer. The individual working in Appellant's dorm room notified his chain of command. The matter was referred to the Security Forces Office of Investiga-

---

[1] As the charged timeframe is from 1 January 2020 to 21 April 2020, all references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Specifically, the military judge sentenced Appellant to be confined for 100 days on Specification 1 (heroin use), to be confined for 125 days on Specification 2 (fentanyl use), and to be confined for 90 days on Specification 3 (methadone possession).

[3] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] Although Appellant was only charged with possessing methadone, he admitted during his guilty plea inquiry that he used methadone.

tions, which obtained Appellant's verbal consent to search the dorm room. Heroin, drug paraphernalia (six syringes with drug residue on them and a spoon), and a vanilla extract bottle containing methadone were seized.

Based on the drug seizure, Appellant was drug tested by urinalysis, and he tested positive for heroin, hydromorphone, and morphine. Based on his drug use, Appellant was sent to a substance abuse treatment facility in Texas. However, approximately two weeks later, Appellant refused to stay in treatment and left the facility. While Appellant was in treatment, a new search authorization was granted for his military dorm room at Shaw AFB, where additional syringes were found (one had an unknown white residue on the tip). Additionally, a metal spoon with a dried substance on it was also found. Testing determined that the substances were heroin.

After leaving treatment, Appellant went back to his duty station. In time, Appellant's suitemate called the Base Defense Operations Center to report that Appellant was acting erratically and a security forces patrolman was sent to the dorms where he observed what appeared to be self-inflicted scratches on Appellant's neck and arms, as well as dilated pupils, and exaggerated and fast speech. Additionally, Appellant was slapping his hands together while rocking back and forth. Emergency Medical Service (EMS) personnel responded and observed Appellant "agitated with hot/flushed skin, pin-point pupils, rapid pulse, high blood pressure, and slurred speech." This led to Appellant providing another urine sample which tested positive for fentanyl.

Subsequent to this incident, Appellant called 911 seeking an emergency response. EMS responded to find Appellant vomiting with traces of blood, having pin-point pupils, and hot/flushed skin. EMS suspected opioid use. Appellant was transported to a medical center where his squadron assigned members of his unit to consistently observe him for his own safety. While at the medical center, Appellant asked one of the unit members assigned to escort him if he could take Appellant back to his dorm room to "get rid of possible evidence he had lying around." When the Airman denied his request, Appellant became agitated. Appellant then attempted to leave his medical room on two separate occasions. Based on this conduct another search authorization was granted for Appellant's dorm room where six syringes (which had either small white residue or brown and red residue on the tips) and a metal spoon with residue of an unknown white and black dried substance were seized. The items were tested and determined to have trace evidence of fentanyl. On these facts, Appellant was charged with use and possession of controlled substances.

Through the negotiation and execution of the plea agreement Appellant was represented by a civilian defense counsel (Mr. MB) and military defense counsel (Captain (Capt) AP). By the time of Appellant's court-martial, Appellant was solely represented by Capt AP. Appellant's issue alleges ineffective

3

assistance of counsel only with regard to Capt AP's representation. However, an appellate court must "evaluate the combined efforts of the defense as a team rather than evaluating the individual shortcomings of any single counsel." *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004) (citing *United States v. McConnell*, 55 M.J. 479, 481 (C.A.A.F. 2001)).

## II. DISCUSSION

As an initial matter, while Appellant raises one claim of ineffective assistance of counsel against Capt AP, he presents six discrete allegations. To support his claim, Appellant moved to attach a declaration, which we granted. In this declaration, Appellant alleges that Capt AP (1) failed to adequately prepare him for his guilty plea inquiry; (2) failed to adequately assist him in making his unsworn statement; (3) failed to properly advise him regarding sentencing character letters; (4) failed to admit mitigating evidence on his behalf; (5) disclosed information about his case to another client of Capt AP; and (6) failed to adequately advise him regarding his deferral options during clemency.

Upon Appellee's motion, we examined the six claimed deficiencies alleged by Appellant and found good cause to compel a declaration or affidavit only as to claims (2), (3), (4), and (6). We found that those claims stood apart from claims (1) and (5) in that we cannot fully resolve claims (2), (3), (4), and (6) without piercing the privileged communications between Appellant and his trial defense counsel.

After considering the submitted declarations[5] and the record of trial, we find that Appellant fails to meet his burden with respect to his ineffective assistance of counsel claims.

## A. Additional Background

In Appellant's offer to plead guilty, he acknowledged that he was satisfied with Capt AP and Mr. MB and "consider[ed] them competent." At his court-martial, while discussing the plea agreement, the military judge had the following colloquy with Appellant:

> [Military Judge (MJ)]: [Appellant], did you have enough time and opportunity to discuss this case with [Capt AP]?
>
> [Appellant]: Yes, I did, sir.

---

[5] We considered Appellant's and trial defense counsel's declarations to resolve the raised issues. *See United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020) (holding Courts of Criminal Appeals may consider affidavits when doing so is necessary for resolving issues raised by materials in the record); *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991).

MJ: Have you, in fact, consulted fully with your defense counsel and received the full benefit of his advice?

[Appellant]: Yes, I have, sir.

MJ: Are you satisfied that the defense counsel's advice is in your best interest?

[Appellant]: Yes, sir.

MJ: Are you satisfied with your defense counsel?

[Appellant]: Yes, sir.

In Capt AP's declaration, he explains that during the seven months of his representation of Appellant, he met with Appellant over a dozen times. Additionally, Capt AP explains that either he or his defense paralegal spoke with Appellant almost weekly. Capt AP also includes that he "was involved with [Appellant's] unit, attended treatment plan meetings with his providers, and advocated on [Appellant's] behalf to investigators and [the base] legal [office] to ensure he received treatment for his addiction instead of pretrial confinement."

### 1. Inadequate Preparation for Appellant's Guilty Plea Inquiry

As to his first claim of ineffectiveness, Appellant alleges that in preparation for his court-martial, he only met with Capt AP and the defense paralegal three to four times; that they discussed the guilty plea inquiry; that Capt AP helped him prepare for the questions the military judge would ask during the guilty plea inquiry; that Capt AP printed out a list of potential questions and answers based off their conversations; that Appellant was to read the typed out answers; and that the whole procedure for the court-martial was written out and scripted by Capt AP. Appellant further states that Capt AP told him that if he "ever became stumped," he would stop him and "whisper in [his] ear what to say."

Appellant complains, however, that there was one question the military judge asked him that was not part of his script. According to Appellant, the question was "how did you inject heroin," which caught Appellant by surprise. Nonetheless, according to Appellant, "I explained to the judge the best I could on the process of [intravenous] drug using." Appellant further complains that after the court-martial, Capt AP told him and his mother that "explaining to the judge in that depth was a very bad idea and did not help [their] case at all." Appellant claims he was "flabbergasted" because his trial defense counsel did nothing to "mitigate the question" or help him respond to it "properly." As previously noted, we did not order Capt AP to respond to this allegation.

### 2. Inadequate Assistance of Appellant's Unsworn Statement

As to his second claim of ineffectiveness, Appellant alleges that Capt AP explained to him that he could submit an unsworn statement at his court-martial. Appellant explains that he was instructed to draft the unsworn statement and send it to his trial defense counsel for review; that on the day of the court-martial, Capt AP gave him the edited unsworn statement; that the unsworn statement was "drastically edited but especially the statement that [he] was to read in open court to the Judge;" and that the unsworn statement "was no longer in [his] own words and didn't even sound like [him]." Appellant claims that Capt AP "took out the parts where [he] discussed [his] sincere remorse for [his] actions and how distraught [he] was about ruining [his] military career." Appellant refers to the amended unsworn statement as "bland and distasteful . . . basically short and to the point."

Capt AP's declaration explains that on 7 July 2020, the defense paralegal sent Appellant the Area Defense Counsel (ADC) office's handout with instructions for the client's role in sentencing package preparation, including a draft unsworn statement, draft biography, photos, decorations, coins, and awards. According to Capt AP, Appellant was informed that any edits to his unsworn statement were only suggestions based on counsel's experience, and that Appellant had no obligation to accept the edits. Capt AP provided the court with the handout as well as an email showing that Capt AP gave Appellant a deadline of 13 July 2020 to return the needed documents, including the unsworn statement. Appellant did not meet the deadline. Capt AP's declaration also shows that the defense paralegal sent Appellant an email on 20 July 2020 that gave Appellant a new deadline of 22 July 2020 to submit the needed documents, including the unsworn statement. According to another attachment to Capt AP's declaration, Appellant also missed this deadline and sent his trial defense counsel the draft unsworn statement on 4 August 2020. Capt AP declares he made changes to the unsworn statement and included, as an attachment to that declaration, Appellant's original drafted unsworn statement and the final version as it appears in the transcript of the record of trial when Appellant read the statement in open court.

### 3. Failure to Properly Advise Appellant Regarding Sentencing Character Letters

With regard to his third alleged claim of ineffectiveness, Appellant argues that Capt AP told him that he could only have family members write character statements and because of this, he only had two family members write letters on his behalf. Furthermore, Appellant states that he could have gotten "numerous of [his] old supervisors to write character letters on [his] behalf."

Capt AP responds by providing an attachment that was provided to Appellant, explaining how he could request character letters or testimony (including

6

from co-workers). Additionally, Capt AP "engaged with several individuals, including [Appellant's] [f]irst [s]ergeant and roommate to obtain their assessment of [Appellant] and identify any other potential people he associated with, in the hope that additional coworkers could be identified." However, Capt AP further explains that "[e]veryone our office spoke to identified [Appellant] as a loner and knew of no additional persons to contact."

### 4. Failure to Admit Mitigating Evidence on Appellant's Behalf

With regard to his fourth allegation of ineffectiveness, Appellant claims that he had multiple drug tests from the intensive outpatient treatment program that were negative for drugs and his trial defense counsel did not introduce them at sentencing.

As to the issue of negative drug tests, and according to his declaration, Capt AP reviewed the records and all submissions received from Appellant, and the ADC office had no record of any negative tests or any requests from Appellant to have those matters included as mitigation in his package.

### 5. Disclosing Appellant's Case Information to Another Client

As to his fifth alleged ineffectiveness claim, Appellant states that his trial defense counsel shared information about his case with Airman G, who was another of Capt AP's clients. Appellant alleges that he and Airman G were incarcerated together, that Airman G would harass him, and that Appellant "almost got in trouble and got my good time taken away which would have added to my sentence." We did not order Capt AP to respond to this allegation.

### 6. Inadequate Advice to Appellant Regarding his Deferral Options During Clemency

With regard to his sixth allegation of ineffectiveness, Appellant claims that Capt AP advised that he should not request a deferment because there was no way that it would ever be granted, and that all he could do was to request a waiver and ask that the money be transferred to his mother.

In response, Capt AP explains that Appellate Exhibit IX, *Post-Trial and Appellate Rights Advisement*, which he also provides as an attachment to his declaration, shows that Appellant was fully advised of his post-trial and appellate rights. Specifically, the post-trial rights advisement advised Appellant, *inter alia*, on the types of forfeiture, their effective dates, and an explanation of deferment and waiver. Capt AP describes the advice to Appellant in his declaration:

> I explained to [Appellant] that deferral was highly unlikely, as his particular circumstances did not warrant deferral based on my experience. As a result of his heroin use, he had overex-

tended on his credit cards and was in significant debt. I did express that although it was a long shot and with a low likelihood of success, the only other option was to do a "[H]ail [M]ary" and request waiver in the hope that the [c]onvening [a]uthority might just be inclined to waive and allow him to use the last of his last Air Force pay to start to pay down some of that debt. We discussed that success was highly unlikely, and that seeking deferral, simply to be obligated to pay at a later time would not have been a solution to his then-financial situation.

Appellant's clemency submission begins with trial defense counsel's memorandum which argues that "[g]ranting [Appellant's] clemency request grants him and his mother some slight financial relief if the automatic forfeitures are waived." Then in his portion of the clemency petition, Appellant asked the convening authority to waive forfeitures, explaining that he was in "extensive debt," that he was not making enough money to pay his bills, and that his mother was paying his bills while he was in confinement, but that his mother had "her own struggles" and Appellant did not want to contribute to "her issues." Appellant explained that "[d]espite fighting [his] way through addiction and to sobriety, [he was] still left with the financial consequences of [his] past addiction." Additionally, Appellant states "the forfeiture of pay penalizes me and my family by extension." Appellant concludes his request by explaining:

> I understand the Air Force has no obligation to help me in this matter, and in-fact, it is not a charity organization. I ask that you please consider the minimal negative impact to the mission by allowing me to continue to receive full E-1 pay while in confinement, and balance it against the benefit that it will provide to myself and more importantly, my mother.

## B. Law

We review claims of ineffective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citation omitted). Appellate courts give great deference to trial defense counsel's judgments and presume "counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 409 (C.M.A. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Ineffective assistance of counsel claims are analyzed under the test set out by the United States Supreme Court in *Strickland* and consider "(1) whether counsel's performance fell below an objective standard of reasonableness; and (2) if so, whether, but for the deficiency, the result would have been different." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citation omitted). An appellant has the burden to demonstrate "both deficient performance and prejudice." *Id.*

The United States Court of Appeals for the Armed Forces (CAAF) recast the *Strickland* standard by asking:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

In conducting an analysis of an ineffective assistance of counsel claim, courts begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). "[T]he burden rests on the accused to demonstrate a constitutional violation." *Id.* An appellant overcomes the presumption of competence only when he shows there were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This court does "not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine[s] 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *Akbar*, 74 M.J. at 379 (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)).

For this reason, defense counsel receive wide latitude in making tactical decisions. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (citing *Strickland*, 466 U.S. at 689). This also applies to trial defense counsel's strategic decisions. *Morgan*, 37 M.J. at 410. Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted). In making this determination, courts must be "highly deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. This specifically applies to sentencing.

However, as to the disposition of claims, the CAAF has instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, [then] that course should be followed." *Id.* (first alteration in original). "When there is an allegation that counsel was ineffective in the sentencing phase of the court-martial, we look to see 'whether there is a reasonable

probability that, but for counsel's error, there would have been a different result.'" *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citation omitted).

In determining whether to grant a post-trial hearing to resolve a factual matter pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967), we are guided by the standard enunciated in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Id.* at 243. Instead we review the six principles for determining whether a *DuBay* hearing is appropriate. They are:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

> Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the court may discount those factual assertions and decide the legal issue.

> Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record . . . unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

> Sixth, the Court of Criminal Appeals is required to order a fact-finding hearing only when the above-stated circumstances are not met.

*United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002) (omission in the original) (citing *Ginn*, 47 M.J. 236).

When deciding whether to take action on the sentence, a convening authority may defer parts of the sentence, including adjudged forfeitures. *United*

*States v. Lundy*, 60 M.J. 52, 54 (C.A.A.F. 2004). "If the accused has dependents, however, the convening authority has discretion to waive all or part of the mandatory forfeitures for a period not to exceed six months." *Id.* The distinction between requests for deferment and waiver of forfeitures are explained in Articles 57 and 58b, UCMJ, 10 U.S.C. §§ 857, 858b, as well as Rule for Courts-Martial (R.C.M.) 1103. R.C.M. 1103(h)(3) defines "dependent" for the purpose of waiver of automatic forfeitures as "any person qualifying as a 'dependent' under 37 U.S.C. [§ ]401." The law is clear that "the accused shall have the burden of showing that the interests of the accused and the community in deferral outweigh the community's interests in imposition of the punishment on its effective date." R.C.M. 1103(d)(2). The rule also provides the factors that the convening authority is to consider upon the filing of a request for deferral. R.C.M. 1103(d)(2) lists the factors as:

> the probability of the accused's flight; the probability of the accused's commission of other offenses, intimidation of witnesses, or interference with the administration of justice; the nature of the offenses (including the effect on the victim) of which the accused was convicted; the sentence adjudged; the command's immediate need for the accused; the effect of deferment on good order and discipline in the command; the accused's character, mental condition, family situation, and service record.

For an appellant to show prejudice for purposes of ineffective assistance of counsel claims in this area, "[v]ague or general intimations" about the "particular nature of the materials" that would or could have been submitted in a clemency petition are insufficient to show prejudice. *United States v. Pierce*, 40 M.J. 149, 151 (C.M.A. 1994). Instead, "[w]hen factual information is central to an ineffectiveness claim, it is the responsibility of the [appellant] to make every feasible effort to obtain that information and bring it to the attention of the appellate court." *United States v. Moulton*, 47 M.J. 227, 230 (C.A.A.F. 1997).

**C. Analysis**

As to Appellant's first allegation, that his trial defense counsel failed to adequately prepare him for his guilty plea inquiry, we find that Appellant has not met his burden. Following the guidance of our superior court, we find it appropriate to resolve Appellant's claim on a lack of sufficient prejudice. *Captain*, 75 M.J. at 103. Even if Appellant's allegations regarding Capt AP's performance in preparing him for this guilty-plea inquiry and failing to whisper the answers to him during the plea inquiry were true, and even if Capt AP's actions fell appreciably below the performance expected of a fallible lawyer, we see no "reasonable probability" that, absent these errors, "there would have been a different result" in Appellant's decision to plead guilty or in the sentence adjudged by the military judge. *Id.*; s*ee also Gooch*, 69 M.J. at 362. Instead, we

find the opposite to be true. The military judge asked Appellant a question which he felt needed to be flushed out further and Appellant answered the question in depth. Additionally, we find this was not likely going to sway the military judge, but instead anticipate that an individual who gives a more thorough accounting of his misconduct demonstrates a desire to accept responsibility more so than an accused who tries to minimize his conduct.

With regard to Appellant's second allegation, that his trial defense counsel failed to adequately assist Appellant in making his unsworn statement, we find that Appellant has not met his burden. Here, while we find that Appellant's affidavit is factually adequate on its face, we further find that the appellate filings and the record as a whole "compellingly demonstrate" the improbability of Appellant's allegations. As such, we discount those factual assertions and decide the legal issue. We start by answering the question of whether Appellant's allegations are true; if so, is there a reasonable explanation for counsel's actions. The email attachments to Capt AP's affidavit demonstrate that the ADC office attempted several times to get Appellant to draft the unsworn statement, and Appellant simply did not meet the reasonable deadlines set by the ADC office. We find that Capt AP did make suggested edits to the unsworn statement that Appellant prepared, but further find that Appellant's original version of the unsworn statement and the one that he ultimately gave at his court-martial are not "drastically" different through the editing process as Appellant claims. Therefore, we find Appellant's allegations against his trial defense counsel true in that he edited Appellant's unsworn statement, but find a reasonable explanation for counsel's actions. As such, Appellant is not entitled to relief on this claim.

As to Appellant's third allegation, that his trial defense counsel failed to properly advise Appellant regarding sentencing character letters, we find that Appellant has not met his burden. We again find it appropriate to resolve Appellant's claim on a lack of sufficient prejudice. Even if Appellant's allegations regarding obtaining character letters from old supervisors were true, we see no reasonable probability that there would have been a different result in the sentence adjudged by the military judge. Just as important, Appellant does not identify which old supervisors would have been willing to write character letters for him, what they would have written, or how their character letters would have changed the sentence. Therefore, Appellant is not entitled to relief on this claim.

With regard to Appellant's fourth allegation, that his trial defense counsel failed to admit mitigating evidence on Appellant's behalf, we again find that Appellant has not met his burden. We also find it appropriate to resolve this claim on a lack of sufficient prejudice. Even if Appellant's claim that he provided negative tests to his attorney were true, we see no reasonable probability

there would have been a different result in the sentence adjudged by the military judge. This is especially true since Appellant himself conveyed that information to the military judge during his unsworn statement when he said, "Today I am 128 days clean, and I live a much happier, fulfilling life." Additionally, even if Capt AP had negative tests to submit, we can easily see why strategically he would choose not to admit them when there was so much evidence of positive tests as well. This is the very reason trial defense counsel receive wide latitude in making strategic and tactical decisions. Accordingly, Appellant is not entitled to relief on this claim.

As to Appellant's fifth allegation, that his trial defense counsel disclosed Appellant's case information to another client, we again find that Appellant has not met his burden. This claim is also appropriate to resolve on a lack of sufficient prejudice. Even if Appellant's allegations that Capt AP shared information about his case were true, we see no reasonable probability that absent the errors there would have been a different result in Appellant's decision to plead guilty or in the sentence adjudged by the military judge. As such, Appellant is not entitled to relief on this claim.

Finally, with regard to Appellant's sixth allegation, that his trial defense counsel failed to adequately advise him regarding his deferral options during clemency, we find Appellant has not met his burden with respect to prejudice. Nonetheless, we find Capt AP not only misadvised Appellant, his advice was deficient under the circumstances here. This is because a convening authority can waive automatic forfeitures for a period not to exceed six months, but only if an appellant has a dependent. Article 58b(b), UCMJ, 10 U.S.C. § 858b(b). If there are no dependents, then denial of waiver would be the expected result. *See*, *e.g.*, *United States v. Hill*, No. ACM S32469, 2017 CCA LEXIS 718, at *6 (A.F. Ct. Crim. App. 21 Nov. 2017) (unpub. op.) (convening authority can waive automatic forfeitures "if there are dependents to receive the waived amount").

While deferral might have been unlikely—as trial defense counsel assessed would be the case here—waiver of forfeitures was not authorized because, as Appellant made it clear in his clemency request, the waiver was intended for his mother, and not for any identified dependent. *See* R.C.M. 1103(h)(3) (citing 37 U.S.C. § 401). Even so, trial defense counsel misadvised Appellant to "request waiver in the hope that the [c]onvening [a]uthority might just be inclined to waive" mandatory forfeitures, as explained in counsel's declaration. Such advice was premised on the convening authority and other officials disregarding R.C.M. 1103(h)(3) and, in turn, 37 U.S.C. § 401. As explained above, waiver of forfeitures is available only for the benefit of a legal dependent. Trial defense counsel's advice to Appellant and submission of a waiver request on Appellant's behalf were deficient because both decisions were premised on government officials, especially the convening authority, acting contrary to law.

A trial defense counsel's deficiency in post-trial representation is tested for prejudice. *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999). When the convening authority's discretion to grant relief to an accused is of a "highly discretionary nature . . . , the threshold for showing prejudice is low." *Id.* In such cases, when evaluating for prejudice under the final *Strickland* prong, the CAAF "will give an appellant the benefit of the doubt and find that 'there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *Id.* (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (1998) (quoting *United States v. Chatman*, 46 M.J. 321, 323-24 (1997))); *see also Strickland*, 466 U.S. at 694 ("The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Consistent with *Lee*, and specifically with regard to claims of ineffective assistance when counsel fails to request a deferment or waiver of forfeitures, the CAAF has directed this court to apply a "colorable showing of possible prejudice" standard. *United States v. Thompson*, 69 M.J. 456 (C.A.A.F. 2010) (mem.) (vacating decision in *United States v. Thompson*, 69 M.J. 516 (A.F. Ct. Crim. App. 2010), and remanding for further review to apply the "'colorable showing of possible prejudice' standard in *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999), in light of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)").

Although a close call, Appellant has not established a colorable showing of possible prejudice. By virtue of being sentenced to both confinement and a punitive discharge at a special court-martial, Appellant was required by operation of law to forfeit two-thirds of all pay during his period of confinement. Article 58b(a)(1), UCMJ, 10 U.S.C. § 858b(a)(1). However, these "automatic" or "mandatory" forfeitures commenced on the date that was 14 days after the date on which the sentence was adjudged. Articles 57(a)(1)(A) and 58b(a)(1), UCMJ, 10 U.S.C. §§ 857(a)(1)(A), 858b(a)(1). Appellant's adjudged reduction in grade similarly went into effect 14 days after his sentence was adjudged by operation of Article 57, UCMJ. Until that occurred, Appellant was entitled to receive his full pay.

To put the deferral issue in perspective, based on Appellant's sentencing date of 26 August 2020 and an entry of judgment (EoJ) of 11 September 2020,[6] we know in hindsight that Appellant would have received an additional two days of two-thirds pay if a deferral had been requested and approved by the convening authority. *See* Article 57(b), UCMJ, 10 U.S.C. § 857(b) ("deferral

---

[6] The convening authority's Decision on Action is dated 4 September 2020.

shall terminate upon entry of judgment"). This is because the EoJ was signed 16 days after sentencing, or 2 days after commencement of automatic forfeitures. However, at the time Appellant sought clemency—Appellant's clemency request is dated 2 September 2020 (and trial defense counsel's submission on behalf of Appellant is dated the day before Appellant's)—there was no assurance the EoJ would be delayed past 9 September 2020, after which Appellant would first realize a financial benefit from deferral, if the deferral had been requested by Appellant and granted by the convening authority.

"An appellate court's evaluation of attorney performance is made from counsel's perspective at the time of the conduct in question." *United States v. Marshall*, 45 M.J. 268, 270 (C.A.A.F. 1996) (citing *Strickland*, 466 U.S. at 689). At the time clemency was sought in early September 2020, there was no assurance that deferment, if granted, would have been consequential. Although it is not the model of clarity, based on the court's understanding of Capt AP's declaration, Capt AP counseled Appellant to use his remaining military pay between sentencing and EoJ to make payment to Appellant's own debts because given the pace at which the EoJ could be signed, deferral was not likely to make much of a dent in his financial situation, *if any*, as so few days of pay might be available after 9 September 2020. In contrast, if waiver were authorized by law and made effective at sentencing, Appellant would have had no legal entitlement to this pay as that right would belong to someone else.

Additionally, at the time Appellant sought clemency from the convening authority, trial defense counsel believed deferment was unlikely. We agree and find no reasonable likelihood the convening authority would have granted relief. An appellant asserting that he would have requested a deferral if he had been advised properly is not enough. *See United States v. Key*, 57 M.J. 246, 249 (C.A.A.F. 2002). There is nothing before us including any offer of proof regarding what he would or could have submitted to support his deferral request. However, assuming Appellant would have justified the deferral request based on the same basis he relied upon for his waiver request (his debt and the financial stress on his family), we do not find it sufficient as a colorable showing of possible prejudice. The convening authority would have considered his request and, pursuant to R.C.M. 1103(d)(2), weighed it against the nature of his offenses which included intravenous drug use on multiple occasions, repeatedly storing drugs and drug paraphernalia in his Air Force dorm room, leaving a substance abuse treatment facility shortly after arriving, continuing drug use after leaving the treatment facility, asking a fellow Airman to help him destroy evidence, and his very short service record. Based on this, we cannot find any reasonable probability that there would have been a different result in the convening authority's decision.

Thus, Appellant is not entitled to relief on his claims.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court